**UNITED STATES, Appellee,**

v.

**Ronald D. GRAF, Aviation Storekeeper Airman U.S. Navy, Appellant.**

No. 66,766.
NMCM 90 2010.

U.S. Court of Military Appeals.

Argued April 7, 1992.

Decided Sept. 30, 1992.

For Appellant: *Eugene R. Fidell* (argued); *Captain Guy R. Abbate*, JAGC, USN and *Captain Dwight H. Sullivan*, USMC (on brief).

For Appellee: *Lieutenant Commander Lawrence Muschamp*, JAGC, USN (argued); *Colonel T.G. Hess*, USMC (on brief); *Commander Thomas W. Osborne*, JAGC, USN and *Major Laura L. Scudder*, USMC.

*Amici Curiae* on behalf of Appellant:

Joan E. Goldberg (argued); Robert B. Weintraub—For the Association of the Bar of the City of New York.

Diana R. Palecek, Student (argued); I. Boyce Covington (on brief); Ann K. Friesen (student)—For Wake Forest University School of Law.

Ann C. Bertino, Student (argued); Michael F. Noone, Jr. (on brief); John S. Huckenpoehler (student)—For the Catholic University School of Law.

Captain Richard W. Aldrich (argued); Colonel Jeffrey R. Owens and Captain David D. Jividen (on brief)—For Appellate Defense Division, USAF.

David H. Resnicoff (argued); David B. Isbell and John Vanderstar (on brief); Arthur B. Spitzer and Elizabeth Symonds (of counsel)—For the American Civil Liberties Union of the National Capital Area and Vietnam Veterans of America.

Lieutenant Commander G Arthur Robbins (argued)—For Appellate Defense Division, USCG.

Joseph W. Kastl (argued)—For Members Opposed to Maltreatment of Servicemembers.

Major James M. Heaton (argued); Colonel Robert B. Kirby and Lieutenant Colonel James H. Weise (on brief); Major Michael J. Kelleher—For Defense Appellate Division, USA.

Daniel P. Meyer, Student (argued); Earl R.C. Singleton (on brief); Jennifer C. Jordan (student)—For Indiana University School of Law.

Keith M. Harrison (on brief); Lisa Fine and Laird Blue (students)—For University of Denver College of Law.

*Amici Curiae* on behalf of Appellee:

Major Jeffrey Lindquist (argued); Lieutenant Colonel Brenda J. Hollis (on brief)—For Appellate Government Division, USAF.

Mark A. Becker, Student (argued); Ronald F. Wright (on brief); Paula R. Jordan (student)—For Wake Forest University School of Law.

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant was tried by a general court-martial composed of a military judge and officer members at Naval Air Station Pensacola, Florida, in June of 1989. After entering mixed pleas, he was found guilty of numerous offenses under the Uniform Code of Military Justice including attempting to sell military property (3 specifications), conspiracy to commit espionage and another conspiracy to commit larceny, violating naval regulations,[1] making a false official statement, possession of marijuana, larceny (3 specifications), housebreaking, and destruction of a public record. *See* Arts. 80, 81, 92, 107, 112a, 121, 130, and 134, UCMJ, 10 USC §§ 881, 880, 892, 907, 912a, 921, 930, and 934, respectively. He was sentenced to a dishonorable discharge, 5 years' confinement, total forfeitures, a $100 fine, and reduction to E–1. In accordance with a pretrial agreement, the convening authority reduced the punitive separation to a bad-conduct discharge, suspended forfeitures in excess of $450 per month for 3 years, and "mitigated" the fine to a forfeiture. Otherwise, he approved the sentence including the adjudged confinement on May 29, 1990. The Court of Military Review affirmed these findings of guilty and the sentence in an unpublished opinion dated April 25, 1991.

On October 29, 1991, this Court granted review on the following two questions of law:

I

WHETHER DUE PROCESS REQUIRES THAT MILITARY TRIAL AND APPELLATE JUDGES BE APPOINTED FOR FIXED TERMS OF OFFICE.

---

1. The military judge also found appellant guilty by exceptions and substitutions of Specifications 1 and 4 of Charge III (attempting to violate service regulations). He subsequently dismissed these specifications prior to sentencing.

## II

WHETHER A STAFF JUDGE ADVO-CATE'S ERRONEOUS ADVICE TO THE CONVENING AUTHORITY THAT AN ACCUSED HAD BEEN CONVICT-ED OF A SPECIFICATION WHICH WAS ACTUALLY DISMISSED CONSTI-TUTED PLAIN ERROR, THUS RE-QUIRING THAT THE ERRONEOUS-LY–ADVISED CONVENING AUTHOR-ITY'S ACTION BE SET ASIDE.

We hold that the Due Process Clause of the Fifth Amendment of the United States Constitution did not require fixed terms of office for the military judge who tried appellant's case or the military appellate judges who decided his earlier appeal. *See generally Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976). Moreover, although all parties agree that the staff judge advocate's recommendation was erroneous to the extent that it reported as findings of guilty two dismissed specifications, any error in this regard we conclude was harmless. Art. 59(a), UCMJ, 10 USC § 859(a).

### FACTS

On May 3, 1989, the Chief of Naval Education and Training, Naval Air Station, Pensacola, Florida, convened a general court-martial to hear cases referred to it. He detailed seven officers to be members of that court-martial, one of whom he subsequently relieved by means of an amending order. Earlier, charges had been preferred against appellant on April 6, 1989, by Lieutenant Glen A. Chidester, who was attached to the Naval Legal Service Office DET, New Orleans, Louisiana. These charges were received by the convening authority, Chief of Naval Education and Training, on June 8, 1989, and the next day he referred these charges to trial by the general court-martial created by his earlier order of May 3, 1989.

The military judge who sat in this case was Commander N.D. Krogmann, JAGC, U.S. Navy. He stated the following concerning his detail to this trial.

MJ: I have been detailed to this court-martial by the Chief Judge, Navy–Marine Corps Trial Judiciary. I am certified in accordance with Articles 26(b) and (c) and sworn in accordance with Article 42(a) of the Uniform Code of Military Justice. I will not be a witness for either side in this case, and I am not aware of any matters which I believe may be a ground for challenge by either side against me. Do counsel for either side have any voir dire or challenge for cause against the military judge? Trial counsel?

Trial counsel had no voir dire or challenge for cause against the military judge.

Civilian defense counsel (CC) requested voir dire of the military judge, which occurred as follows:

CC: Have you had any discussions concerning this case with anyone, other than counsel in the case?

MJ: The answer's obviously yes. I've had to speak with my superiors in the chain of command in the judiciary with regard to matters concerning the case. For example, as I told you, I was detailed by the Chief Judge. He personally detailed me. Do you want to be more specific in your question. I'm not quite sure—

CC: You've responded in the sense that I expected. Have you had any—I take it you are, from time to time, in contact with Chief Judge Galvin [sic]?

MJ: Garvin.

CC: Garvin?

MJ: Yes.

CC: Has Chief Judge Garvin ever communicated with you concerning his agreement or disagreement with any of your actions or sentences in particular cases?

MJ: No.

CC: Either in writing or orally?

MJ: Not to my recollection.

CC: Now my understanding is that your assignment here is pursuant to orders issued by the Chief of Naval Personnel?

MJ: That's correct.

CC: What is the duration of your assignment?

MJ: Three years, approximately.

CC: Is that a fixed term of office, or could that be changed by Washington?

MJ: [Hesitated ... ]

CC: I'll reframe that if you'd like?

MJ: Please do.

CC: Is there anything to prevent Washington from ordering you out of here before three years or keeping you here longer than three years?

MJ: No.

CC: Would it be fair to say then that you do not have a fixed term of office in this assignment?

MJ: Yes.

CC: Were you a judge in 1984?

MJ: For part of the year, yes.

CC: For the part that you were not a judge, what was your assignment?

MJ: I was the Staff Judge Advocate, Commander, Patrol Wings Atlantic.

CC: Did you participate in 1984, or perhaps 1985, in a survey that was conducted pursuant to the Military Justice Act of 1983?

MJ: I honestly do not recall, counsel.

CC: Have you ever seen the report issued by the Military Justice Act of 1983 Advisory Commission?

MJ: I don't recall it specifically, but I'm sure I have in some way seen parts of it.

CC: Do you recall seeing, either in hard copy or in summary form, the results of the survey concerning whether military judges should have fixed terms of office?

MJ: I really don't.

CC: And you don't recall receiving a questionnaire during that timeframe, either as an SJA or as a military judge?

MJ: I recall some type of questionnaire, counselor, but there were some that were sent to convening authorities, as I recall and some sent to individuals. It's been so long ago I have no recollection. I'd like to know what this has to do with my qualifications to sit on this case or challenges against me?

CC: We will be lodging a challenge on the premise that you do not have a fixed term of office.

MJ: Are you about to do that, or have you just done so?

CC: I will when I conclude the voir dire.

MJ: Go ahead.

CC: Have you ever—are you aware of any instance in which a military judge was threatened with reassignment or actually reassigned because of his or her decisions?

MJ: No.

CC: You never heard of that happening?

MJ: No. I take—let me rephrase that. The question was never heard that happening, the answer to that is, yes, I have never heard of such a thing.

CC: Okay. And I take it that it's never happened to you, no one has ever threatened you or actually transferred you because of your military—your judicial actions as a judge?

MJ: To my knowledge, that's correct. Everything that—when I've been transferred, when I was a military judge before, it was routine.

CC: I will at this point lodge an objection, if I may, by way of challenge to the court on the notion that in a felony case such as this the trial judge should have a fixed term of office as a matter of due process. Under the circumstances we think an objection lies, and we would like that made a matter of record.

MJ: Anything from the trial counsel with regard to that matter?

CC: No, Your Honor.

MJ: I believe it would be correct to rule upon this as a challenge against me based on that basis. Is that correct?

CC: Yes, that is correct.

MJ: The challenge for cause is not granted, that is, it is denied. Is there anything further, counsel?

CC: No, not as far as voir dire is concerned.

Appellant was subsequently tried and convicted of various offenses and sentenced by the court-martial of members as noted above. On May 29, 1990, the convening authority, in accordance with a pretrial agreement, approved a somewhat lesser

sentence. On October 17, 1990, appellant filed his assignments of error with the Court of Military Review. The first assigned error stated:

THE MILITARY JUDGE ERRED BY DENYING A DEFENSE MOTION CHALLENGING HIM FOR CAUSE BECAUSE HE HAD NO FIXED TERM OF OFFICE.

On that same date, appellant filed a motion to disqualify the members of the panel of the Court of Military Review assigned to hear his case because they were not protected by a fixed term of office. The Court of Military Review denied the motion for disqualification on December 19, 1990, in an order accompanied by an opinion authored by Senior Judge Eileen Albertson. 32 MJ 809. A motion for reconsideration filed by appellant was denied on January 14, 1991. Finally, the Court of Military Review affirmed appellant's conviction and sentence on April 25, 1991.

---

### Prelude

Appellant claims that his affirmed court-martial conviction was secured in violation of "the Due Process Clause" of the Fifth Amendment to the United States Constitution.[2] He asserts that the military judge who conducted his court-martial and the appellate military judges who decided his appeal had no "fixed terms of office" of any length. (Final Brief at 1.) He argues that the absence of fixed terms of office for these judges and their institutional control by the Judge Advocate General of the Navy precluded them from having the judicial independence required by this provision of the Constitution for judges in serious criminal cases. Accordingly, he asks that his court-martial conviction be set aside and that a new court-martial and appeal, if necessary, be ordered before military judges with some fixed term of office. *E.g. R. v. Généreux* [1992] 1 S.C.R. 259 (Sup.Ct. of Canada).

The Government opposes this argument. It agrees with appellant that neither military trial judges nor military appellate judges have fixed terms of office and that they serve at the pleasure of the Judge Advocate General. Yet, it contends that Congress was constitutionally empowered to create a military justice system utilizing judges without "some fixed tenure in office" (Answer to Final Brief at 4) and that this Court should defer to that legislative judgment.[3] Accordingly, it asserts that no provision of the Constitution or the Uniform Code required military judges with fixed terms of office for appellant's case.

◼ We agree with appellant that the Due Process Clause of the Fifth Amendment applies to a servicemember at a court-martial. *See Middendorf v. Henry,* 425 U.S. at 43, 96 S.Ct. at 1291. Moreover, we hold that judicial independence is a neces-

---

2. The Fifth Amendment states:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law;* nor shall private property be taken for public use without just compensation.

(Emphasis added.)

3. We agree with appellant that there is a substantial difference between the word "tenure" and the word "term" in the context of his argument. He cites language from *Robinson v. United States,* 42 Ct. Cl. 52, 56 (1907), as illustrating this point:

While it may be true that, as applicable to the length of time to which a person may be elected or appointed to an office, the words "tenure" and "term" are often used interchangeably, we believe there is generally a recognized difference in their meaning as used in statutes, and in fact their general use. The derivation of the words well indicates the difference—the one the right to hold office for an indefinite time and the other a period of time within fixed limits.

Reply Brief at 14 n.9. We also note that the Government does not argue that a military officer's tour of duty as a trial or appellate judge is a fixed term in the above sense.

sary component of due process required for judges in serious criminal cases. *See Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), and *In Re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *see also Schweiker v. McClure*, 456 U.S. 188, 195–96, 102 S.Ct. 1665, 1670, 72 L.Ed.2d 1 (1982); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980). Nevertheless, we hold that a fixed term of office is not required as a matter of constitutional due process for military judges at courts-martial. *See generally Medina v. California*, U.S., — U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992); *Bozin v. Secretary of the Navy*, 657 F.Supp. 1463, 1467–69 (D.DC 1987). Finally, we conclude, for the reasons set out below, that the Uniform Code of Military Justice provides the requisite independence for all military judges to meet this Fifth Amendment requirement. Arts. 26 and 37, UCMJ, 10 USC §§ 826 and 837, respectively. *See United States v. Mabe*, 33 MJ 200 (CMA 1991).

# I

## *The Code*

A preliminary but nonetheless essential step in resolving the first granted issue is to determine what the Uniform Code of Military Justice provides concerning fixed terms of office for military trial and appellate judges. If the Code expressly or impliedly requires some term of office for these judges, our search for such a requirement in the Due Process Clause of the Fifth Amendment to the Constitution becomes unnecessary. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concurring); K. Ripple, *Constitutional Litigation* § 3–9 at 103 (1984). Moreover, assuming some type of constitutional-due-process analysis is eventually required in this case, an understanding of the congressionally created structure in which these judges operate will be critical. *See Middendorf v. Henry, supra* at 43, 96 S.Ct. at 1291; *Parker v. Levy*, 417 U.S. 733, 752,

94 S.Ct. 2547, 2560, 41 L.Ed.2d 439 (1974); *see also Rostker v. Goldberg*, 453 U.S. 57, 67, 101 S.Ct. 2646, 2653, 69 L.Ed.2d 478 (1981).

In this regard, we initially note that all our military law is necessarily grounded in the United States Constitution. *Dynes v. Hoover*, 61 U.S. (20 How.) 65, 15 L.Ed. 838 (1858). Moreover, the Constitution confers broad power on Congress "[t]o make Rules for the Government and Regulation of the land and naval Forces." Art. I, § 8, cl. 14. *See Rostker v. Goldberg, supra* at 67, 101 S.Ct. at 2653. *See also Solorio v. United States*, 483 U.S. 435, 448, 449, 107 S.Ct. 2924, 2931, 2932, 97 L.Ed.2d 364 (1987); *Goldman v. Weinberger*, 475 U.S. 503, 506–08, 106 S.Ct. 1310, 1312–14, 89 L.Ed.2d 478 (1986). Pursuant to this power, Congress created the military judge and the appellate military judge in 1968. *See* Military Justice Act, Pub.L. No. 90–632, §§ 2(9) and 2(27), 82 Stat. 1336–37, 1341 (Oct. 24, 1968). *See generally Schlesinger v. Councilman*, 420 U.S. 738, 757–58, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975).

Article 1(10), UCMJ, 10 USC § 801(10), defines a military judge as "an official of a general or special court-martial detailed in accordance with section 826 of this title (article 26)." Article 26(b), which establishes his qualifications, states:

> (b) A military judge shall be a commissioned officer of the armed forces who is a member of the bar of a Federal court or a member of the bar of the highest court of a State and who is certified to be qualified for duty as a military judge by the Judge Advocate General of the armed force of which such military judge is a member.

Article 66(a), UCMJ, 10 USC § 866(a), establishes the qualifications of an appellate military judge. It states:

> (a) Each Judge Advocate General shall establish a Court of Military Review which shall be composed of one or more panels, and each such panel shall be composed of not less than three appellate military judges....Appellate military judges who are assigned to a Court of

Military Review may be commissioned officers or civilians, each of whom must be a member of a bar of a Federal court or of the highest court of a State. The Judge Advocate General shall designate as chief judge one of the appellate military judges of the Court of Military Review established by him. . . .

Basically, a military judge is a commissioned officer who also is a lawyer and certified or assigned as a military judge by the Judge Advocate General of his service.

4. Article 39 states:
   § 839. Art. 39. Sessions
   (a) At any time after the service of charges which have been referred for trial to a court-martial composed of a military judge and members, the military judge may, subject to section 835 of this title (article 35), call the court into session without the presence of the members for the purpose of-
   (1) hearing and determining motions raising defenses or objections which are capable of determination without trial of the issues raised by a plea of not guilty;
   (2) hearing and ruling upon any matter which may be ruled upon by the military judge under this chapter, whether or not the matter is appropriate for later consideration or decision by the members of the court;
   (3) if permitted by regulations of the Secretary concerned, holding the arraignment and receiving the pleas of the accused; and
   (4) performing any other procedural function which may be performed by the military judge under this chapter or under rules prescribed pursuant to section 836 of this title (article 36) and which does not require the presence of the members of the court.
   These proceedings shall be conducted in the presence of the accused, the defense counsel, and the trial counsel and shall be made a part of the record. [These proceedings may be conducted notwithstanding the number of members of the court and without regard to ... article 29. (Added in 1990.)]
   (b) When the members of a court-martial deliberate or vote, only the members may be present. All other proceedings, including any other consultation of the members of the court with counsel or the military judge, shall be made a part of the record and shall be in the presence of the accused, the defense counsel, the trial counsel, and, in cases in which a military judge has been detailed to the court, the military judge.

5. Article 51(a) states:
   § 851. Art. 51. Voting and rulings
   (a) Voting by members of a general or special court-martial on the findings and on the

The Uniform Code of Military Justice also delineates what these military judges do. Article 26(a) generally says that "[t]he military judge shall preside over each open session of the court-martial to which he has been detailed." More particularly, the Code authorizes military judges to hear and determine motions on various matters (see Art. 39(a)(1), UCMJ, 10 USC § 839(a)(1)),[4] rule on "all questions of law and all interlocutory questions" (Art. 51(b), UCMJ, 10 USC § 851(b)),[5] and to enter findings of

sentence, and by members of a court-martial without a military judge upon questions of challenge, shall be by secret written ballot. The junior member of the court shall count the votes. The count shall be checked by the president, who shall forthwith announce the result of the ballot to the members of the court.
   (b) The military judge and, except for questions of challenge, the president of a court-martial without a military judge shall rule upon all questions of law and all interlocutory questions arising during the proceedings. Any such ruling made by the military judge upon any question of law or any interlocutory question other than the factual issue of mental responsibility of the accused, or by the president of a court-martial without a military judge upon any question of law other than a motion for a finding of not guilty, is final and constitutes the ruling of the court. However, the military judge or the president of a court-martial without a military judge may change his ruling at any time during trial. Unless the ruling is final, if any member objects thereto, the court shall be cleared and closed and the question decided by a voice vote as provided in section 852 of this title (article 52), beginning with the junior in rank.
   (c) Before a vote is taken on the findings, the military judge or the president of a court-martial without a military judge shall, in the presence of the accused and counsel, instruct the members of the court as to the elements of the offense and charge them-
   (1) that the accused must be presumed to be innocent until his guilt is established by legal and competent evidence beyond reasonable doubt;
   (2) that in the case being considered, if there is a reasonable doubt as to the guilt of the accused, the doubt must be resolved in favor of the accused and he must be acquitted;
   (3) that, if there is a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt; and

guilty and the sentence (Art. 51(d)) when the accused so requests (Art. 16(1)(B), UCMJ, 10 USC § 816(1)(B)). If he is sitting with court members, he shall instruct the members on various matters necessary to reaching appropriate findings and sentence (Art. 51(c)).

Article 66 also details the function of an appellate military judge, as follows:

(c) In a case referred to it, the Court of Military Review may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.

(d) If the Court of Military Review sets aside the findings and sentence, it may, except where the setting aside is based on lack of sufficient evidence in the record to support the findings, order a rehearing. If it sets aside the findings and sentence and does not order a rehearing, it shall order that the charges be dismissed.

In short, a military judge does the type of things that civilian judges do. *See* American Bar Association, *Standards for Criminal Justice,* Chapters 6 (Special Functions of the Trial Judge); 20 (Appellate Review of Sentences); 21 (Criminal Appeals) (2d ed.1982). *See generally United States v. Ware,* 1 MJ 282 (CMA 1976).

In addition, the Uniform Code of Military Justice determines when a military judge sits in a particular case. Article 6(a), UCMJ, 10 USC § 806(a), generally states:

(4) that the burden of proof to establish the guilt of the accused beyond reasonable doubt is upon the United States.

(d) Subsections (a), (b), and (c) do not apply to a court-martial composed of a military judge only. The military judge of such a court-martial shall determine all questions of law and fact arising during the proceedings

"The assignment for duty of judge advocates of the Army, Navy, Air Force, and Coast Guard shall be made upon the recommendation of the Judge Advocate General of the armed forces of which they are members. The assignment for duty of judge advocates of the Marine Corps shall be made by direction of the Commandant of the Marine Corps." Article 26(a) further states:

(a) A military judge shall be detailed to each general court-martial. Subject to regulations of the Secretary concerned, a military judge may be detailed to any special court-martial. *The Secretary concerned shall prescribe regulations providing for the manner in which military judges are detailed for such courts-martial and for the persons who are authorized to detail military judges for such courts-martial.* The military judge shall preside over each open session of the court-martial to which he has been detailed.

(Emphasis added.)

Moreover, Article 26(c) provides:

(c) *The military judge of a general court-martial shall be designated by the Judge Advocate General, or his designee, of the armed force of which the military judge is a member for detail in accordance with regulations prescribed under subsection (a).* Unless the court-martial was convened by the President or the Secretary concerned, neither the convening authority nor any member of his staff shall prepare or review any report concerning the effectiveness, fitness, or efficiency of the military judge so detailed, which relates to his performance of duty as a military judge. *A commissioned officer who is certified to be qualified for duty as a military judge of a general court-martial may*

and, if the accused is convicted, adjudge an appropriate sentence. The military judge of such a court-martial shall make a general finding and shall in addition on request find the facts specially. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact appear therein.

*perform such duties only when he is assigned and directly responsible to the Judge Advocate General, or his designee, of the armed force of which the military judge is a member and may perform duties of a judicial or nonjudicial nature other than those relating to his primary duty as a military judge of a general court-martial when such duties are assigned to him by or with the approval of that Judge Advocate General or his designee.*

(Emphasis added.)

Pursuant to Article 26, the Secretary of the Navy created the Navy–Marine Corps Trial Judiciary for the purpose of providing "certified military judges for all general and special courts-martial convened within the naval service." (Para. 5.) It provides for an Office of the Chief Judge of the Navy–Marine Corps Trial Judiciary, Judicial Circuits, and Branch Offices, all under the control of the Judge Advocate General of the Navy. (Paras. 6 and 9.) *See* SECNAVINST. 5813.6C (13 April 1979).

6. 3. **Mission and Functions.** The Trial Judiciary shall:

a. Provide certified military judges for all general and special courts-martial. The Trial Judiciary has an affirmative duty to ensure that each referred general and special court-martial is speedily tried, to intervene when a case is not being speedily tried, and to take appropriate action to expedite each case. The Trial Judiciary shall coordinate with appropriate authorities with a view to ensuring that all cases referred to trial are received by the Trial Judiciary as soon as possible after referral. Records of trial shall be expeditiously, but carefully, authenticated upon receipt.

&ast; &ast; &ast; &ast; &ast; &ast;

4. **Authority and Responsibility.** In order to accomplish the mission and functions of the Trial Judiciary, authority and responsibility are prescribed for specified personnel thereof as follows:

a. **The Chief Judge of the Navy–Marine Corps Trial Judiciary,** (hereinafter referred to as "Chief Judge"), as the Judge Advocate General's representative, is the Officer in Charge of the Trial Judiciary and shall exercise command over the Trial Judiciary. The Chief Judge is also the designee of the Judge Advocate General as that term is used in Article 26 of reference (a) [UCMJ] and RCM 108 and RCM 502(c) of reference (b) [MCM, 1984]. The Chief Judge shall administer the Trial Judiciary, supervise and coordinate the

The Judge Advocate General of the Navy has in turn stated in section 0120 of The Manual of the Judge Advocate General (Change 6–April 22, 1987) the following:

**0120 PERSONNEL OF COURTS-MARTIAL**

a. *Military Judges*

(1) *Availability for detailing*

(a) *General court-martial judges.* General court-martial judges may be detailed for trial of general and special courts-martial by the Chief Judge, the circuit military judge, or the circuit military judge's designee.

(b) *Special court-martial judges.* Special court-martial judges may be detailed for trial of special courts-martial by the Chief Judge, the circuit military judge, or the circuit military judge's designee.

In addition, the Judge Advocate General of the Navy promulgated JAG Instruction 5813.4E (10 March 1986) to further implement the above regulations.[6] The bottom

activities of all of its personnel, ensure the effective interchange of information and services among military judges, and perform such other duties respecting the Trial Judiciary as the Judge Advocate General may direct. The Chief Judge may reassign the responsibilities of other judges on a temporary basis. The Circuit Military Judge for the Atlantic Judicial Circuit shall be the Deputy Chief Judge and, with his staff, shall assist the Chief Judge in the performance of his responsibilities.

b. **The circuit military judge** of each judicial circuit shall be designated by the Chief Judge. The circuit military judge is responsible for the administration and internal organization of that circuit and shall assist the Chief Judge, as required.

5. **Establishment of Judicial Circuits and Branch Offices.** The judicial circuits of the Trial Judiciary are established to provide military judges within the defined geographical areas of responsibility. The descriptive name, location of the principal office, and the geographical limits of the judicial circuits are as shown in enclosure (1). [Enclosure omitted.] The geographical limits of the several judicial circuits are established to effect a division of work and responsibility. They shall in no way affect the jurisdiction of any court-martial. The creation or deletion of circuits or the temporary reassignment of areas of responsibility may be accomplished by the

line is that the circuit military judge, except in certain delineated cases reserved for the Chief of the Trial Judiciary, details trial judges to individual cases. *See United States v. Allen*, 31 MJ 572, 584, 586 (NMCMR 1990), *affd*, 33 MJ 209 (CMA 1991).

Finally, the Uniform Code of Military Justice provides for establishment of procedures for handling complaints against military trial and appellate judges with respect to their fitness for duty as a judge. Article 6a, UCMJ, 10 USC § 806a (Nov. 29, 1989),[7] states:

§ 806a. Art. 6a. Investigation and disposition of matters pertaining to the fitness of military judges

(a) The President shall prescribe procedures for the investigation and disposition of charges, allegations, or information pertaining to the fitness of a military judge or military appellate judge to perform the duties of the judge's position. To the extent practicable, the procedures shall be uniform for all armed forces.

(b) The President shall transmit a copy of the procedures prescribed pursuant to this section to the Committees on Armed Services of the Senate and House of Representatives.

Congress' intent in this regard was to provide for establishment of rules on the fitness of military judges, which "to the extent consistent with the Uniform Code of Military Justice ... should emulate the standards and procedures that govern investigation and disposition of allegations concerning judges in the civilian sector." H.R. Conf. Rep. No. 331, 101st Cong., 1st Sess. 659 (1989), *reprinted in* 1989 U.S.Code Cong. & Admin. News 838, 977, 1116. *See United States Navy–Marine Corps Court of Military Review [hereafter NMCMR] v. Carlucci*, 26 MJ 328 (CMA

Judge Advocate General without change to this directive.

6. **Detailing Military Judges to Courts-martial**

a. Section 0120 of reference (d) [JAGINST 5800.7B] states the authority to detail military judges to general and special courts-martial. To be detailed, a Navy or Marine Corps officer must meet the qualifications prescribed in RCM 502(c) of reference (b) [MCM, 1984] and must be assigned permanently or temporarily to the Trial Judiciary. The Chief Judge is authorized to limit further which judge may be detailed to courts-martial and under what circumstances he or she may be detailed.

b. *The circuit military judge (or a designee) who is assigned to a geographical area is the individual who details military judges within that geographical area.* If a court-martial is to assemble at a geographical location not within the area of any judicial circuit, the Chief Judge is authorized to assign to a circuit the responsibility for the detailing of a military judge to that court-martial. *No one outside the Trial Judiciary may influence the detailing of any military judge to any particular case. Within each judicial circuit, it is the responsibility of the circuit military judge to ensure adherence to this principle.*

c. It is vital that the judiciary discourage "judge shopping" and ensure the continuous availability of timely and economical judicial service. Consequently, no military judge shall be detailed to a court-martial that is to convene in a judicial circuit other than the circuit to which the military judge is assigned, except by the direction of the Chief Judge or when there is a mutual agreement between the circuit military judge having cognizance over the trial and the circuit military judge to which the military judge being detailed is assigned. In this latter situation, the permission of the Chief Judge must be obtained *unless* [*] there is an emergency situation outside CONUS *and* [*] the Chief Judge reasonably cannot be contacted (*e.g.*, both circuits are located overseas). In such exceptional circumstances, the Chief Judge shall be notified, as soon as practicable, of the circumstances.

d. Noncompliance with subparagraphs b and c of this paragraph shall in no way affect the jurisdiction of any court-martial.

7. **Rules of Court.** The Chief Judge may establish such rules of court as are appropriate for trials throughout the Naval Service and may authorize circuit military judges to implement further those rules to accommodate practice within their circuits. The Chief Judge shall retain local rules of court which are required to be forwarded to the Judge Advocate General by RCM 108 of reference (b) [MCM, 1984].

(Emphasis added except for [*].)

7. Prior to that time questions of this type were referred to the Judge Advocate General and this Court. *See United States Navy–Marine Corps Court of Military Review v. Carlucci*, 26 MJ 328 (1988); *In Re Taylor*, 12 USCMA 427, 31 CMR 13 (1961).

1988). *See also United States v. Mabe*, 33 MJ 200.

■ In view of the above, the Government is correct in asserting that the Uniform Code of Military Justice does not require a fixed term of office of any length for trial or appellate military judges. Appellate defense counsel, however, contends that this judicial protection is not prohibited by any codal provision and the failure to implement such a program is a result of "an informal practice" of the Department of Defense and the military services. (Final Brief at 10.) We agree, but the bottom line is clear. Congress has not provided for a fixed term of office for military trial and appellate judges. *See Middendorf v. Henry*, 425 U.S. at 43, 96 S.Ct. at 1291 (Congress determined "that counsel should not be provided in summary courts-martial.").

## II

### *The Constitution*

The next question which we will address is whether a servicemember at a general court-martial is entitled to protection of the Due Process Clause of the Fifth Amendment. *See Middendorf v. Henry, supra.* If he is not entitled to this constitutional protection, appellant's particular claim for fixed-term judges based on this provision must necessarily fail. We hold that a servicemember, such as appellant, is entitled to this constitutional protection at a court-martial at least as it is applied in the military context. *See Middendorf v. Henry, supra* at 35, 44, 96 S.Ct. at 1288, 1292. *See generally United States v. Stuckey*, 10 MJ 347, 349 (CMA 1981); *United States v. Jacoby*, 11 USCMA 428, 430–31, 29 CMR 244, 246–47 (1960).

In past years there has been substantial scholarly debate on applicability of the Bill of Rights to the American servicemember. *E.g.* Henderson, *Courts–Martial and the Constitution: The Original Understand-*

ing, 71 Harv. L.Rev. 293 (1957); *cf.* Wiener, *Courts–Martial and the Bill of Rights: The Original Practice I*, 72 Harv. L.Rev. 1 (1958); Wiener, *Courts–Martial and the Bill of Rights: The Original Practice II*, 72 Harv. L.Rev. 266 (1958);[8] H. Moyer, *Justice and The Military* [hereafter Moyer] §§ 2–103 to 2–108 (1972). This Court's position is clear and well established: "[T]he protections in the Bill of Rights, except those which are expressly or by necessary implication inapplicable, are available to members of our armed forces. *Burns v. Wilson*, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); *Shapiro v. United States*, 107 Ct. Cl. 650, 69 F.Supp. 205 (1947); *United States v. Hiatt*, 141 F.2d 664 (CA 3d Cir.) (1944)." *United States v. Jacoby*, 11 USCMA at 430–31, 29 CMR at 246–47. *See United States v. Matthews*, 16 MJ 354, 380 (CMA 1983); *United States v. Stuckey, supra; United States v. Ezell*, 6 MJ 307 (CMA 1979); *Courtney v. Williams*, 1 MJ 267, 270–71 (CMA 1976). In this light, we have particularly held that a servicemember at a general court-martial is entitled to the protection of "the due process of law guaranteed by the Fifth Amendment." *See Cooke v. Orser*, 12 MJ 335, 338 (CMA 1982).

The Supreme Court, of course, has spoken on the question whether a servicemember is entitled to the protection of the Fifth Amendment Due Process Clause at summary courts-martial. In *Middendorf v. Henry, supra*, the Court considered whether an accused was entitled to counsel at such a proceeding. The Supreme Court recognized the difference between the summary court-martial (an informal procedure for handling minor offenses) and the general and special courts-martial (which resemble judicial proceedings). Nevertheless, it still held that a servicemember at the summary court-martial was protected by the Due Process Clause of the Fifth Amendment because he was "subjected to loss of

---

**8.** Even the distinguished military lawyer and legal historian, Colonel Wiener, has suggested that courts-martial in today's modern military services *can* be properly subjected to the Due

Process Clause of the Fifth Amendment. *See* Wiener, *Courts–Martial and the Bill of Rights: The Original Practice II*, 72 Harv.L.Rev. 266, 304 (1958).

liberty or property." 425 U.S. at 43, 96 S.Ct. at 1291. We ineluctably conclude from this holding that a servicemember is also entitled to this constitutional protection at general and special courts-martial because the stakes there are considerably higher. *See Solorio v. United States*, 483 U.S. at 451 n.18, 107 S.Ct. at 2933 n. 18. *See also Goldman v. Weinberger*, 475 U.S. at 507, 106 S.Ct. at 1313; *Rostker v. Goldberg*, 453 U.S. at 67, 101 S.Ct. at 2653.

## III

### *The Process Due*

The next matter we must address in this case is the test for determining a servicemember's due process rights under the Fifth Amendment. Appellant, somewhat reluctantly, relies on the recent Supreme Court decision in *Medina v. California*, U.S., — U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), as establishing the constitutional test for due process at courts-martial. The Government eschews debate on this question. Government counsel assert that the servicemember is entitled only to the process which Congress deems appropriate and that this Court must defer to its judgment. *See generally Goldman v. Weinberger*, 475 U.S. at 508, 106 S.Ct. at 1313, and *Rostker v. Goldberg*, 453 U.S. at 70, 101 S.Ct. at 2654. We disagree with the Government's total-deference theory and hold that the *Medina* test applied in the military context is appropriate to resolve this question. *See generally Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281 and *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547.

We first note that the Supreme Court has repeatedly emphasized the broad deference that should be afforded Congress in providing for a servicemember's rights. *See Solorio v. United States*, 483 U.S. at 447–48, 107 S.Ct. at 2931. The Supreme Court, however, has not considered such deference absolute. In *Rostker v. Goldberg, supra* at 67, 101 S.Ct. at 2653, then-Justice Rehnquist pointedly observed:

None of this is to say that Congress is free to disregard the Constitution when it acts in the area of military affairs. In that area, as any other, Congress remains subject to the limitations of the Due Process Clause, *see Ex parte Milligan*, [(71 U.S.)] 4 Wall. 2 [18 L.Ed. 281] (1866); *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146, 156 [40 S.Ct. 106, 108, 64 L.Ed. 194] (1919), but the tests and limitations to be applied may differ because of the military context. We of course do not abdicate our ultimate responsibility to decide the constitutional question, but simply recognize that the Constitution itself requires such deference to congressional choice. *See Columbia Broadcasting System, Inc., v. Democratic National Committee*, 412 U.S., [94] at 103 [93 S.Ct. 2080, 2087, 36 L.Ed.2d 772 (1973)]. In deciding the question before us we must be particularly careful not to substitute our judgment of what is desirable for that of Congress, or our own evaluation of evidence for a reasonable evaluation by the Legislative Branch.

In this light, the Government's invitation to bury our heads in the sand is particularly unappealing. *See generally United States v. Matthews*, 16 MJ at 364–68.

Appellant on the other hand has attempted to fashion a test for a soldier's due process rights at court-martial based on civilian Supreme Court decisions. He initially relied on the administrative-due-process test fashioned by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Later, he has asserted that the due process test for state criminal proceedings recently acknowledged in *Medina v. California*, — U.S. ——, 112 S.Ct. 2572, 120 L.Ed.2d 353, is appropriate. We simply cannot equate a general court-martial and its power to sentence soldiers to death or life imprisonment with a routine administrative determination of social security benefits. However, in the absence of more particular guidance from the Supreme Court, we conclude that the state-criminal-proceeding test drawn from *Medina v. California, supra*, and

*Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), is helpful. Nevertheless, we recognize that, in applying its factors, we must "only decide whether the factors militating in favor of" fixed terms for military judges at general courts-martial "are so extraordinarily weighty as to overcome the balance struck by Congress." *Middendorf v. Henry,* 425 U.S. at 44, 96 S.Ct. at 1292 (footnote omitted).

The Supreme Court in *Medina v. California, supra,* articulated the general principle of due process applicable in state criminal trials and the factors to measure it. Justice Kennedy said:

The proper analytical approach, and the one that we adopt here, is that set forth in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), which was decided one year after *Mathews.* In *Patterson,* we rejected a due process challenge to a New York law which placed on a criminal defendant the burden of proving the affirmative defense of extreme emotional disturbance. Rather than relying upon the *Mathews* balancing test, however, we reasoned that a narrower inquiry was more appropriate:

"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, *Irvine v. California,* 347 U.S. 128, 134 [74 S.Ct. 381, 384, 98 L.Ed. 561] (1954) (plurality opinion), and that we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, *it is normally 'within the power of the State to regulate procedures under which its laws are carried out, including the burden of producing evidence and the burden of persuasion,' and its decision in this regard is not subject to proscription under the Due Process Clause unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Speiser v.*

*Randall,* 357 U.S. 513, 523 [78 S.Ct. 1332, 1341, 2 L.Ed.2d 1460] (1958); *Leland v. Oregon,* 343 U.S. 790, 798 [72 S.Ct. 1002, 1007, 96 L.Ed. 1302] (1952); *Snyder v. Massachusetts,* 291 U.S. 97, 105 [54 S.Ct. 330, 332, 79 L.Ed. 674] (1934)." *Patterson v. New York, supra,* 432 U.S., at 201–202, 97 S.Ct. at 2322.

Accord, *Martin v. Ohio,* 480 U.S. 228, 232, 107 S.Ct. 1098, 1101, 94 L.Ed.2d 267 (1987). As *Patterson* suggests, because the States have considerable expertise in matters of criminal procedure and the criminal process is grounded in centuries of common-law tradition, it is appropriate to exercise substantial deference to legislative judgments in this area. The analytical approach endorsed in *Patterson* is thus far less intrusive than that approved in *Mathews.*

*Based on our review of the historical treatment of the burden of proof in competency proceedings, the operation of the challenged rule, and our precedents,* we cannot say that the allocation of the burden of proof to a criminal defendant to prove incompetence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York, supra,* 432 U.S., at 202, 97 S.Ct., at 2322 (internal quotations omitted). Historical practice is probative of whether a procedural rule can be characterized as fundamental. *See ibid.; In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 1071, 25 L.Ed.2d 368 (1970).

—— U.S. at ——, 112 S.Ct. at 2577 (emphasis added).

## IV

### Application

The first factor to be considered in applying the due process test of *Medina* is the historical treatment of judges in the American judicial system. Appellate defense counsel and various *amici* have presented a persuasive and, in fact, an uncontrovert-

ed argument that a fixed term of office of some type is a fundamental component of the Anglo–American civilian judicial tradition. *See The American Bench: Judges of the Nation* (6th ed.1991–92); M. Ziskind, *Judicial Tenure in the American Constitution: English and American Precedents,* 135 S.Ct. Rev. 134 (1969); J. Baker, *An Introduction to English Legal History* 144–46 (2d ed.1979).

However, we also note that Great Britain has never had professional military or civilian judges presiding at its courts-martial, and the United States only recently created such an official in 1968. Prior to that time, courts of officer members, advised by civilian or military lawyers but not controlled by them, dispensed justice in the military. *See* C. Clode, *The Administration of Justice Under Military and Martial Law* 125–26 (1874 2d ed.); W. Winthrop, *Military Law and Precedents* 179–204 (2d ed. 1920 Reprint); Stuart–Smith, *Military Law: Its History, Administration and Practice,* 85 Law Quarterly Review 478 (1969), *reprinted in* Mil.L.Rev. Bicent. Issue 25, 28–29, 35–36, 44 (1975); Bretherton Derrick, *Review* [Phase 2—Disciplinary] Ministry of Legal Defense §§ 4.4:450 and 4.4:80 (1986). Clearly, the historical maintenance of such diverse systems of justice for almost 300 years suggests the absence of a fundamental-fairness problem. Even if it suggested otherwise, the present American system utilizing the professional military judge but reserving personnel flexibility represents a major step in the direction of the preferred civilian practice which cannot now be gainsaid. *See generally* The Military Justice Act of 1983 Advisory Commission Report (hereafter Commission Report), vol. 1 at 8–9 (1984); Moyer, *supra* § 2–620 at 534.

Our second concern is whether a judicial system without fixed terms of office "transgresses any recognized principle of 'fundamental fairness' in operation." *See Medina v. California,* — U.S. at —, 112 S.Ct. at 2578, 120 L.Ed.2d 353. We note that the Supreme Court has never expressly held that a judge in a criminal case must have a fixed term of office of any length in order to independently perform his duties. However, it has held that the Due Process Clause of the Fifth Amendment does not require tenure during good behavior for such judges. *See Palmore v. United States,* 411 U.S. 389, 410, 93 S.Ct. 1670, 1682, 36 L.Ed.2d 342 (1973). In view of other guarantees of independence provided for military trial judges in the Uniform Code of Military Justice, noted below, we further hold that court-martial judges can independently and fairly perform their duties without protection of a fixed term of office.

In reality, the Uniform Code of Military Justice provides substantial independence and protection for military judges, both trial and appellate, despite their subordinate position in the military hierarchy. First, it provides for an administrative method of complaint against interfering superiors within the uniformed service itself, which ultimately requires the attention of the civilian secretary of that service. Art. 138, UCMJ, 10 USC § 938. Second, it provides for the preferral of charges and possible court-martial of any servicemember, whatever his grade or rank, who influences or attempts to influence a judge's findings or sentencing decisions at courts-martial. Art. 98, UCMJ, 10 USC § 898. *See* Art. 37. Finally, in extraordinary cases where the above remedies are not adequate, resort to this Court under the All Writs Act, 28 USC § 1651(a), is possible. *See NMCMR v. Carlucci,* 26 MJ 328; *see also Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300; *Bozin v. Secretary of the Navy,* 657 F.Supp. 1463. While invocation of any of these procedures as weapons to maintain judicial independence may incur some hostility, official retaliation as a result of their utilization cannot and will not be tolerated. *See* Commission Report, *supra* at 9.

Our third concern is whether Supreme Court precedents suggest that military judges serving without fixed terms of office somehow offend traditional notions of fundamental fairness. We think not. In this regard we note that, prior to 1968 and the creation of the military judge, the Su-

preme Court was well aware that the military justice system did not provide for judges with life tenure. *See United States ex rel. Toth v. Quarles*, 350 U.S. 11, 17, 76 S.Ct. 1, 5, 100 L.Ed. 8 (1955). Moreover, after creation of the military judge, the Supreme Court again recognized the fact that this system of justice did not have judges with life tenure. *See Palmore v. United States*, 411 U.S. at 404, 93 S.Ct. at 1680. While these decisions do not expressly approve a judicial system or a judiciary without a fixed term of office, their silence in approving judgments from such a system is deafening. *See Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924; *Schlesinger v. Councilman*, 420 U.S. at 759, 95 S.Ct. at 1314. *See also Chappell v. Wallace*, 462 U.S. 296, 301–02, 103 S.Ct. 2362, 2366, 76 L.Ed.2d 586 (1983).

As noted above, a finding of a Fifth Amendment due process violation in appellant's case requires a conclusion that the factors favoring fixed terms of office for military judges "are so extraordinarily weighty as to" justify "overcom[ing] the balance struck by Congress." *Middendorf v. Henry*, 425 U.S. at 44, 96 S.Ct. at 1292. While such an innovation might someday be found not to infringe on military personnel flexibility or change the nature of courts-martial proceedings, we conclude that it is not now required as a matter of fundamental fairness at courts-martial. In our view, the factors favoring a requirement of fixed terms of office for military judges are at present not "so extraordinarily weighty as to" justify our upsetting Congress' present determination in this regard.

Thus, this Court respectfully declines the invitation in the instant case to legislate by litigation. If it is right that military judges have a fixed term, let Congress by legisla-

tion or the President by rule-making grant a fixed term to these judges. *See Chappell v. Wallace, supra* at 304, 103 S.Ct. at 2367.[9] Those two branches of Government have the power and the duty to accomplish this task if, after a thoughtful and responsible factfinding process either branch decides that a fixed term for military judges will better the justice which servicemembers receive. *See United States v. Ledbetter*, 2 MJ 37, 43 n.12 (CMA 1976).

V

*Judicial Independence*

A more difficult aspect of appellant's challenge to the military judiciary stems from his remaining claim that these judges serve at the will of the Judge Advocate General of each service. He basically contends that they are subject to decertification or transfer by the Judge Advocate General or his designee if their judicial actions on findings and sentence displease these military officers. The Government counters that "courts-martial are entirely within the executive branch and accountable to it, have no independence other than that prescribed by statute (for instance, Article 37, UCMJ) and regulation, and do not participate in the judicial power of the United States." (Answer to Final Brief at 11.) We agree with appellant that he is entitled to independent judges, but we also conclude that Congress provided such judges for his trial and appeal. *See United States v. Mabe*, 33 MJ 200.

As a starting point, we note that every American is entitled to a judicially independent and impartial judge. The Supreme Court in *In Re Murchison*, 349 U.S. 133,

---

**9.** As Justice Felix Frankfurter stated, "Courts ought not to enter this political thicket." *Colegrove v. Green*, 328 U.S. 549, 556, 66 S.Ct. 1198, 1201, 90 L.Ed. 1432 (1946). The President and Congress are well equipped to conduct hearings or studies into the methods to improve the independence of military judges. Maybe fixed terms or some other form of career enhancement or protection would be beneficial to in-

crease independence or the appearance of independence in the military judge position. Surely, a thorough inquiry into the independence of military judges would include confidential interviews of present or retired officers who serve or have served as military judges. As Oliver Wendell Holmes, Jr., said, "The life of the law has not been logic; it has been experience." *The Common Law* (1881).

136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955), poignantly stated:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "every procedure which would offer a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law." Tumey v. State of Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 [(1927)]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 [99 L.Ed. 11 (1954)].

(Emphasis added.) See also Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 822, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986); Marshall v. Jerrico, Inc., 446 U.S. at 242, 100 S.Ct. at 1613. A servicemember in our military is usually an American citizen, and thus we believe he is entitled to this fundamental due process protection at his court-martial. See Middendorf v. Henry, 425 U.S. 25, 96 S.Ct. 1281, and Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547. Accordingly, the pertinent question becomes whether the military judge at his court-martial or on appeal can be removed by the Judge Advocate General or his designee because of their displeasure with his findings or sentence practice.

■ In United States v. Mabe, supra, this Court confronted the argument that the Judge Advocate General of the Navy or his designee could rate a military judge in his performance reports based on either's evaluation of the appropriateness of his sentences at courts-martial. We held that the existence of such a power in these military officers was inconsistent with Congress' establishment of the military "judge" in Article 26 and its exercise violated Article 37 of the Code. See also United States v. Beckermann, 27 MJ 334, 338 (CMA 1989); United States v. Moorehead, 20 USCMA 574, 578, 44 CMR 4, 8 (1971). Today, we simply hold that exercise of the power to decertify or transfer a military judge based on these military officers' opinions of the appropriateness of his findings and sentences likewise violates Articles 26 and 37 of the UCMJ. See also Art. 6a. In our view, the Uniform Code of Military Justice contemplates that a military judge be a real judge as commonly understood in the American legal tradition. See United States v. Mabe, supra; NMCMR v. Carlucci, 26 MJ 328; and United States v. Ware, 1 MJ 282.

## VI

### Conclusion

No discussion of military judicial independence would be complete without consideration of the recent decision of the Supreme Court of Canada in R. v. Généreux [1992] 1 S.C.R. 259. While such a decision is not binding on this United States Court, the question raised in that case with respect to the Canadian military justice system and the Canadian Charter of Rights and Freedoms is certainly analogous. Moreover, our examination of the majority opinion in that case reveals a thoughtful approach to this question which should be considered in achieving a full and fair resolution of appellant's Fifth Amendment due process claim.

Initially, we must say that this decision is extraordinary both in terms of its exposition of Anglo–American principles of fundamental fairness and its demonstrated concern for the realities of military service.

A majority of the Court held that a Canadian General Court–Martial, as constituted at the time of Généreux's trial, was not an independent and impartial tribunal as required by various provisions of the Canadian Charter of Rights and Freedoms. Relying on its own prior decisions, it held that such a tribunal not only must be independent and impartial but also must appear so to a reasonable person familiar with the constitution and structure of a General Court–Martial. In particular, it found that Généreux's court-martial appeared to lack the essential prerequisites of such a tribunal, namely security of tenure, financial security, and institutional independence.

This analytical framework is not antithetical to the decisions of our Supreme Court or our own decisions pertaining to the basic due process required for servicemembers at courts-martial. *See In Re Murchison*, 349 U.S. 133, 75 S.Ct. 623; *United States v. Hilow*, 32 MJ 439, 442–43 (CMA 1991); *see also United States v. Rosser*, 6 MJ 267, 273 (CMA 1979); *United States v. Conley*, 4 MJ 327, 330 (CMA 1978). However, our application of these principles to the military justice system of the United States and its military judges does not necessarily lead to the same result. As the majority of the Supreme Court of Canada pointedly observed, "The status of a General Court Martial, in an objective sense, *as revealed by the statutory and regulatory provisions which governed its constitution and proceedings* at the time of the appellant's trial, must be examined to determine whether the institution has the essential characteristics of an independent and impartial tribunal." 1 S.C.R. at 296. (Lamer, C.J.) (emphasis added). We conclude that our general courts-martial as presently constituted can be objectively perceived as being independent and impartial.

The first factor promoting judicial independence cited by the Supreme Court of Canada is "security of tenure." *Id.* at 301. That Court, however, clearly indicated that what is essential in this factor is that the decisionmaker be removable only for cause. We believe this concern is adequately satisfied by decisions of this Court, including today's, which prohibit adverse removal action from being taken against a military judge as a result of his judicial actions. *See NMCMR v. Carlucci, supra; cf. In Re Taylor*, 12 USCMA 427, 31 CMR 13 (1961). The recent enactment of Article 6a confirms our conclusion in this regard.

The second factor required by the *Généreux* decision for a finding of judicial independence is "financial security." 1 S.C.R. at 305. The primary concern of the Supreme Court of Canada with its military justice system was the fitness reports for military judges and their potential effect on a military judge's career. Again, we have already confronted this problem and have held that neither the Judge Advocate General nor his designee can manipulate these reports as a result of their dissatisfaction with a judge's findings and sentence in a particular case or over a period of time. *See United States v. Mabe*, 33 MJ 200.

Finally, the question of "institutional independence" in terms of the Executive Branch of our Government as a whole must also be considered. 1 S.C.R. at 301. We have commented on this particular concern before. *E.g., United States v. Hagen*, 25 MJ 78, 86–88 (1987) (Sullivan, J., concurring), *cert. denied*, 484 U.S. 1060, 108 S.Ct. 1015, 98 L.Ed.2d 981 (1988). Moreover, in *NMCMR v. Carlucci*, 26 MJ 328, this Court affirmatively acted to protect the military appellate judiciary from untoward interference by the Department of Defense, its Inspector General and the Judge Advocate General. We do not retreat from this protective role today.

In sum, our military justice system and its military judges are not constituted the same as those considered in the *Généreux* case.[10] While we have great respect for

---

10. We note that a military judge at a court-martial of the United States cannot be overruled in his judicial decisions by the president of the court-martial, the convening authority, or his staff judge advocate. *See generally United States v. Ware*, 1 MJ 282 (CMA 1976). Neither the Canadian military judge advocate nor the British civilian or military judge advocates possess

Canada and its Supreme Court, we are not convinced that its decision in that case compels a similar result in appellant's case. Article 37 of the Uniform Code and our decisions applying this statute and other provisions of our Code to military trial judges and appellate judges are the key distinguishing factors in this regard. Accordingly, we cannot reverse appellant's court-martial conviction based on the decision of the Supreme Court of Canada in *Généreux*.

### Post-trial Advice

■ Turning to the second granted issue, the Government has conceded that the staff judge advocate erroneously advised the convening authority that appellant was found guilty by exceptions and substitutions of specifications 1 and 4 of Charge III (attempting to wrongfully violate a general regulation). It has also conceded that the court-martial order incorrectly reflects findings of guilty to these offenses and that modification of that order is appropri-

equivalent power. *See R. v. Généreux* [1992] 1 S.C.R. 259, 300 (Sup.Ct. of Canada); Queen's Regulations and Orders for the Canadian Forces (Vol. II) § 112.54–55 (1987): Manual of Military Law, (Part I) Ministry of Defense (1972) (as amended 8/26/91) § 63, 80–82, 93–97, Br. 11:

ate. We also note that appellant pleaded guilty to those offenses and that the military judge did find him guilty of these offenses as pleaded. However, the judge *sua sponte* dismissed these specifications as multiplicious for findings with specification 1 of Charge VI (attempt to sell military property) and specification 3 of Charge VI (attempt to sell military property). In view of the number of offenses for which appellant was properly found guilty and the particular merger situation presented in this case, we agree that modification of the order is alone required. Art. 59(a), UCMJ, 10 USC § 859(a). *Cf. United States v. Craig*, 28 MJ 321 (CMA 1989).

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed. The court-martial order, however, will be modified to reflect the final disposition of specifications 1 and 4 of Charge III at trial.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

Manual of Naval Law (Vol. II) § 1603, 1609, 1709 (Ministry of Defense, Naval Personnel 3 (Discipline)) 1991. Judicial independence thus cannot be narrowly defined in light of one's term of office.