**UNITED STATES, Appellee,**

**v.**

**Donna M. NORFLEET, Staff Sergeant,
U.S. Air Force, Appellant.**

No. 98–1131.
Crim.App. No. S29280.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 8, 1999.

Decided Aug. 16, 2000.

EFFRON, J., delivered the opinion of the Court, in which GIERKE, J., and COX, S.J., joined. CRAWFORD, C.J., and SULLIVAN, J., filed opinions concurring in part and in the result.

For Appellant: *Major Gilbert J. Andia, Jr.*, USAFR (argued); *Major Stephen P. Kelly* and *Captain Karen L. Hecker* (on brief); *Colonel Douglas H. Kohrt, Lieutenant Colonel James R. Wise, Lieutenant Colonel Ray T. Blank, Jr., Major Carol L. Hubbard,* and *Major Thomas R. Uiselt.*

For Appellee: *Captain Christa S. Cothrel* (argued); *Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers,* and *Captain Mitchel Neurock,* USAFR (on brief).

Judge EFFRON delivered the opinion of the Court.

At a special court-martial, appellant pleaded guilty to wrongful use of marijuana, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. She was sentenced by officer members to a bad-conduct discharge and reduction to pay grade E-1. The convening authority approved the sentence as adjudged, and the Court of Criminal Appeals affirmed in an unpublished opinion dated July 22, 1998.

On appellant's petition, we granted review of the following issues:

I. WHETHER THE MILITARY JUDGE SHOULD HAVE RECUSED HIMSELF IN LIGHT OF THE INVOLVEMENT OF HIS SUPERIORS IN THE PRETRIAL PROCESSING OF APPELLANT'S CASE.

II. WHETHER, WITHOUT EXPLANATION, THE AIR FORCE PROVIDED LESS DUE PROCESS TO APPELLANT, AN ENLISTED MEMBER, THAN IT PROVIDED TO AN OFFICER IN A PREVIOUS COURT-MARTIAL IN THE SAME COMMAND.

III. WHETHER THE MILITARY JUDGE ERRED BY NOT REQUIRING THE GOVERNMENT TO SHOW THAT A STATED REASON FOR A PEREMPTORY CHALLENGE OF A FEMALE COURT MEMBER WAS NOT MERELY PRETEXTUAL.

For the reasons set forth below, we affirm.

### I. THE MILITARY JUDGE

#### A. The factual setting

At the time the charges were preferred and referred in this case, appellant was serving as a paralegal in the grade of Staff Sergeant (E-5). Her duty station was the Area Defense Counsel Office, RAF Lakenheath, in England. She was assigned for administrative purposes, including military justice matters, to the Air Force Legal Services Agency (AFLSA), located at Bolling Air Force Base, Washington, D.C. All defense paralegals, area defense counsel, circuit counsel, and military judges were assigned to the AFLSA. The AFLSA was attached to the 11th Wing at Bolling AFB for host support, and the 11th Wing Commander was the convening authority for courts-martial involving AFLSA personnel.

Appellant, who had 18 years of active service, provided a urine sample in the course of a random inspection, and that sample tested positive for marijuana. Based upon the test results, she was charged with wrongful use of marijuana. The charge was preferred by Captain Karyn Wright of the 11th Mission Support Squadron on December 5, 1995. The first indorsement, which was signed by the AFLSA Commander, Colonel (Col.) William A. Moorman, forwarded the charge to the 11th Support Group. In the indorsement, Col. Moorman stated:

I am forwarding the charge and specification preferred against Staff Sergeant Donna M. Norfleet. Staff Sergeant Norfleet's history of performance on assigned duties has been excellent. Due to my position as Commander, Air Force Legal Services Agency, it is inappropriate for me to make a recommendation as to disposition of the charges. I also decline to make a recommendation as to rehabilitation potential. . . .

Subsequent to referral, but prior to commencement of trial, Col. Richard Rothenburg replaced Col. Moorman as the AFLSA Commander. On December 13, the charges were referred to a special court-martial by Col. Steven A. Roser, the 11th Wing Commander.

The case was tried at RAF Mildenhall, England. The Chief Judge of the Air Force's European Circuit, Col. James A. Young, detailed himself to preside. At the outset of the trial, defense counsel submitted a motion for appropriate relief, requesting (1) that "the military judge recuse himself," and (2) that "a judge from another military service . . . be detailed" to preside.

Defense counsel emphasized that the motion did not constitute a challenge for cause, but focused instead on whether the military judge should recuse himself under RCM 902(a), Manual for Courts–Martial, United States (1998 ed.), which states that "a military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." Defense counsel emphasized that "the defense does not possess any evidence nor make a claim that this or any Air Force judge is personally biased against the accused." The motion reflected appellant's view that "it is the appearance of fairness that should be of paramount concern here."

In support of the motion, appellant noted that the charges had been forwarded by the AFLSA Commander, who was in the direct chain of command for both the accused and the military judge; that the defense intended to challenge the processing of the case through motions that "may necessarily call into question the actions of the members of AFLSA"; and that the motions would "only

further bring into light the role played by AFLSA commanders, who are or may be direct raters and/or indorsers of the Air Force military judge." In addition, appellant noted that the AFLSA Commander "received the accused's request for discharge in lieu of court-martial and (the defense assumes) provided a recommendation to the Convening Authority, who denied the request." (Parenthetical in original.) Appellant also took note of the fact that an Army judge had been detailed to preside in *United States v. Nichols*, 42 MJ 715 (A.F.Ct.Crim.App.1995), involving charges against an Air Force defense counsel preferred by the AFLSA Commander. Appellant's motion further stated that if the motion to recuse was denied, "our hands are going to be tied with regard to election of our forum. . . . [W]e would be somewhat compelled into a selection of members which may or may not necessarily be the way we would have proceeded had a different branch of the service had a military judge sit on this case."

Appellant followed this with a motion challenging the processing of the case. In that motion, appellant contended that the AFLSA Commander's decision to forward the charges without recommendation was inconsistent with the Discussion accompanying RCM 306(c)(5), which states that when a "commander . . . lack[s] authority to take action . . . , the matter should be forwarded to a superior officer with a recommendation as to disposition.", Appellant also alleged that the AFLSA Commander's decision to not set forth a recommendation violated RCM 401(c)(2)(A), which provides: "When charges are forwarded to a superior commander for disposition, the forwarding commander shall make a personal recommendation as to disposition. If the forwarding commander is disqualified from acting as convening authority in the case, the basis for the disqualification shall be noted." In addition, appellant alleged that the AFLSA Commander had failed to refer appellant for a substance abuse evaluation, as required by Air Force Instruction 36–2701, and that such an evaluation could have provided "important insight into the nature of the offense and the extenuating and mitigating factors to be con-

sidered." In appellant's view, the omissions of the AFLSA Commanders constituted an abuse of discretion because "in their desire to appear 'nonconflicted,' they have not carried out their obligations as her commander."

The defense counsel asked for permission to question the military judge on the issue of disqualification or for the military judge "to state for the record exactly where you fall within th[e] chain of command and your relationship to both the past and current Air Force Legal Services Agency Commander." The military judge responded: "All right, I'll do that. You may, of course, voir dire me if you'd like; but I will put that on the record first." He then described his relationship to the AFLSA by noting that as Chief Military Judge of the European Circuit, his Officer Performance Report (OPR) was written by Col. James Heupel, the Chief Air Force Trial Judge. His OPR was indorsed by Col. Rothenburg, who served both as the Director of the Judiciary and the Commander of the AFLSA. The military judge subsequently noted that his performance report was subject to further review by the Judge Advocate General of the Air Force, Major General Hawley. The defense counsel noted that he had "[n]o questions with the chain of command as you've outlined it" and did not *voir dire* the military judge.

After considering the arguments of counsel, the military judge noted that he had taken an oath as an officer "to do my duty under law" and had also "taken an oath to dispense justice impartially." He added that Col. Heupel had taken "a similar oath," and that Col. Rothenberg and Major General Hawley, who previously served as military judges, would be "familiar with the judge's oath and [would] readily understand the need for independence of trial judges." He summarized his 6 years of service as a trial and appellate judge, observing that he had issued a variety of rulings against the Government and that he had never received "any criticism of any of my rulings" from his supervisors, from the Judge Advocate General, or in his performance reports.

With respect to the issues raised by the defense, he observed that he did not know

the accused, that he did not know why Col. Moorman had "forward[ed] the charges without recommendations," and that it appeared that neither party had asked Col. Moorman to give his reasons for that action. He observed that Col. Rothenberg's recommendation to disapprove the request for discharge in lieu of court-martial had stated that the charges "involve[d] illegal drugs, a special concern in the Air Force," that appellant was a noncommissioned officer (NCO) with over 17 years experience, and that appellant "held a special position in the administration of justice as a defense paralegal when she committed the alleged offense." He added that the act of forwarding charges or disapproving a discharge in lieu of court-martial did not represent "a conclusion that the person is guilty but rather an expression that the issue should be resolved by a court." He specifically stated that in ruling on the recusal motion he "consider[ed] the fact that the defense intends to litigate the appropriateness of the preferral and referral of the charges in this case." He also noted that Col. Heupel had "appoint[ed] an Army judge to try the Nichols case," which "eliminate[d] any appellate issue" in that case, but he was not compelled to do so in the present case because the Air Force probably had not been "legally required" to use a judge from another service in *Nichols*.

The military judge stated, "I feel absolutely no pressure from anyone to resolve this case or any of the issues involved in this case in any manner inconsistent with my understanding of the law and my own conscience." He denied the recusal motion, concluding that "a reasonable person who knew all these facts would not question my impartiality in this case."

The military judge then considered appellant's motion challenging the propriety of the forwarding and referral of charges. He concluded that relief was not warranted, noting: (1) the Commander of the AFLSA was not required to provide a recommendation as to disposition under RCM 401(c)(2)(B); (2) the Commander's rationale—"that he did not want to create any appearance" of preferring a "particular disposition"—constituted "a

good faith basis for declining to provide a recommendation"; (3) even if appellant should have been referred administratively for substance-abuse evaluation, failure to do so was not "an impediment to the referral of charges"; and (4) the convening authority considered the particular facts and circumstances of appellant's case, and the referral did not constitute an abuse of discretion.[1]

On review in the court below pursuant to Article 66, UCMJ, 10 USC § 866 (1994), appellant renewed her challenge to the actions surrounding referral of the charge and the decision of the military judge to not recuse himself. Appellant again noted that in a separate case involving charges against an Air Force defense counsel, *United States v. Nichols,* 42 MJ 715, 718 (A.F.Ct.Crim.App. 1995), the Air Force had detailed an Army military judge, and she claimed that the failure to do the same in her case was a denial of due process.

The Court of Criminal Appeals rejected appellant's claim that it was improper for the AFLSA commander to forward the charge without recommendation, noting that her guilty plea had waived the issue. The court added that even if not waived, there was no requirement for the forwarding commander to submit a recommendation since the case was being forwarded to a parallel commander rather than a superior commander. *See* RCM 401(c)(2)(B). Unpub. op. at 3. With respect to recusal, the court found that in light of "the disclosures made by the military judge, no reasonable person aware of th[e] facts would have questioned his fairness or impartiality." *See* RCM 902. The court also held that the Air Force was not bound to take the same action in appellant's case— detailing a military judge from another service—as it had taken in *Nichols.* The court noted that in *Nichols,* "the AFLSA Commander actually preferred the charges," whereas in the present case, the commander had simply forwarded the charge without recommendation. The court also indicated that because the action in *Nichols* was based

on different facts, it did not bind the Air Force to take the same action in a separate and different case. Unpub. op. at 4.

### B. Background—The Trial Judiciary in the Military Justice System

From the Revolutionary War through World War I, courts-martial consisted of panels of officers in which all questions— including interlocutory issues—were decided by the panel as a whole. *See* W. Winthrop, Military Law and Precedents 172 (2d ed.1920 Reprint); paras. 89–90, Manual for Courts-Martial, 1917 at 46; §§ 370–71, Naval Courts and Boards, 1937. In 1920, the Articles of War (AW 8 and 31) were amended to provide that in Army general courts-martial, the convening authority would appoint "one of the members" of the panel to serve as the law member. Normally, the law member was a judge advocate, but a "specially qualified" officer could be appointed if a judge advocate was not available. Act of June 4, 1920, 41 Stat. 787. In addition to serving as a voting member of the court-martial panel on the findings, sentence, and challenges, the law member of a general court-martial was authorized to rule on interlocutory matters. Except for certain evidentiary issues, however, the rulings of the law member could be overruled by a majority of the panel. In the absence of a law member, and at all special courts-martial, the president of the court-martial ruled upon all interlocutory matters, including evidentiary questions, and the rulings of the president were subject to being overruled by a majority of the panel. AW 31 (1920); para. 51, Manual for Courts–Martial, United States, 1928.

The substantial criticism of the military justice system as it operated in World War II led to enactment of the Uniform Code of Military Justice, which contained a wide variety of reforms designed to minimize the influence of command over the court-martial process. *See* Edmund M. Morgan, *The Background of the Uniform Code of Military Justice,* 6 Vand. L.Rev. 169 (1953); H.R.Rep. No. 491, 81st Cong., 1st Sess. 6–7 (1949);

---

1. In the appeal to our Court, appellant has not challenged the propriety of the forwarding and referral of charges.

S.Rep. No. 486, 81st Cong., 1st Sess. 3–4, 6 (1949). Among the most significant changes, Congress required (in Article 26(a), UCMJ, 10 USC § 826(a)[2]) the appointment in general courts-martial of a "law officer," an attorney "certified to be qualified for such duty by the Judge Advocate General" of the service concerned. Unlike the "law member," the law officer did not serve as a member of the court-martial panel, but instead was assigned powers and duties similar to those of a civilian judge. Arts. 26(b) and 51, UCMJ, 10 USC §§ 826(b) and 851.[3] Act of May 5, 1950, ch. 169, 64 Stat. 117, 124. The law officer ruled finally on most interlocutory questions, and as implemented in the Manual for Courts–Martial, United States, 1951, and under the decisions of this Court, provided authoritative instructions to the members on matters of law and assumed general responsibility "for the fair and orderly conduct of the proceedings." *See* para. 39(b)(1); *see generally* paras. 61(c), 70, 73, and 76, 1951 Manual, *supra; United States v. Biesak,* 3 USCMA 714, 722, 14 CMR 132, 140 (1954) (equating "the status of the law officer, wherever possible, to that of a civilian judge of the Federal system").

Although the Judge Advocate General certified the qualifications of law officers under Article 26 of the new Code, the appointment of a law officer to particular courts-martial was made by the commander convening the court. There was no provision for appointment of a law officer to preside over special courts-martial.

Congress further enhanced the role of the trial judiciary in the Military Justice Act of 1968, 82 Stat. 1336. As noted in the report of the Senate Armed Services Committee, the legislation was designed to "streamline court-martial procedures in line with procedures in U.S. district courts, to redesignate the law officer of a court-martial as a 'military judge' and give him functions and powers more closely aligned to those of Federal district judges, ... [and] to increase the independence of military judges and members and other officials of courts-martial from unlawful influence by convening authorities and other commanding officers...." S.Rep. No. 1601, 90th Cong., 2d Sess. 3 (1968), U.S.Code Cong. & Admin.News 1968, pp. 4501, 4503–4504. The Committee noted that the legislation would "provide for the establishment within each service of an independent judiciary composed of military judges certified for duty on general courts-martial who are assigned directly to the Judge Advocate General of the service and are responsible only to him or his designees for direction and fitness ratings." *Id.* at 7. The applicable legislation has remained unchanged since the 1968 amendments.[4]

To separate the military judiciary from the traditional lines of command, Article 26(b) provides that military judges who preside over general courts-martial must be certified as qualified by the Judge Advocate General of the service concerned. Under Article 26(c), the military judge "shall be designated for detail" to preside over specific courts-martial by "the Judge Advocate General, or his designee," and must be assigned to an organization "directly responsible to the Judge Advocate General, or his designee" in which his or her "primary duty" is to serve

---

2. Current version codified at 10 USC § 826.

3. Current version codified at 10 USC § 851.

4. Other provisions of the 1968 legislation that enhanced the powers of the trial judiciary, and which remain in effect, included amendments to: Art. 16, UCMJ, 10 USC § 816 (authorizing judge-alone trials in special and non-capital (Art. 18, UCMJ, 10 USC § 818) general courts-martial); Art. 19, UCMJ, 10 USC § 819 (precluding adjudication of a bad-conduct discharge by a special court-martial unless a military judge presided, with limited exceptions); Art. 39(a), UCMJ, 10 USC 839(a) (authorizing sessions without the panel members present in which the military judge may arraign the accused, receive pleas, dispose of motions and other interlocutory matters, and conduct similar proceedings); Art. 41, UCMJ, 10 USC § 841 (assigning responsibility to the military judge for ruling on challenges against members or the judge); Art. 49, UCMJ, 10 USC § 849 (authorizing the military judge to rule on the propriety of depositions); Art. 51 (providing for the military judge to instruct the court-martial panel on issues of law and to rule finally on questions of law and virtually all interlocutory matters); and Art. 54, UCMJ, 10 USC § 854 (assigning responsibility for authentication of the record to the military judge).

as a military judge. To further enhance the independence of judicial decisionmaking by military judges, Article 26(c) provides that no convening authority and no member of the convening authority's staff may "prepare or review any report concerning the effectiveness, fitness, or efficiency of the military judge ... which relates to his performance of duty as a military judge." [5]

Congress has provided that an otherwise properly certified military judge would be disqualified from presiding in the same case in which he or she: (1) is an accuser, *see* Art. 1(9), UCMJ, 10 USC § 801(9); (2) is a witness for the prosecution; (3) acted as the investigating officer; or (4) acted as counsel for either party. Art. 26(d).

A military judge is not statutorily disqualified from presiding in a case involving an accused who is superior in rank or grade to the military judge or who is a member of the same unit as the military judge, in contrast to the limitations on who may serve as a member of a court-martial panel. *See, e.g.,* Art. 25(d)(1), UCMJ, 10 USC § 825(d)(1) (the general prohibition against service on a court-martial panel by a person junior in rank or grade to the accused); Art. 25(c)(1) (precluding service on a court-martial panel by an enlisted person from the same unit as the accused).

The legislative history and the structure of the legislation reflect the fact that Congress established the position of military judge within the context of the military establishment, rather than as a separate entity. The position of military judge may be filled only by a "commissioned officer," not a civilian. *Compare* Art. 26(b) *with* Art. 66(a). As such, the military officers who serve as military judges are subject to the personnel practices that apply to military officers in general, including involuntary assignment to a position outside the judiciary, involuntary geographic reassignment, review by promotion and retention boards that are not limited to considering military judges, and absence of

tenure in the position.[6] Military judges receive standard officer performance reports, subject to the limitations in Article 26(c).

Military judges are expected to render decisions that may adversely impact on their superior officers. When the accused is a field grade or general officer, it would not be unusual for the presiding military judge to be an officer of lower grade than the accused. At trial, actions of an officer superior in grade to the military judge frequently are at issue, such as search authorizations and matters involving allegations of command influence. In such cases, the military judge has the authority to order the superior officer to appear and testify, and may issue rulings that require the superior to take or withhold certain actions—including rulings that reflect adversely on the performance of the superior officer. In some cases, these judicial rulings also may contradict directly the legal opinions of judge advocates superior in grade to the military judge, including opinions of the Judge Advocate General of the military department concerned. Whatever discomfort these circumstances may have created in an earlier era, the military establishment has long since accepted these functions of the military judiciary as essential to the maintenance of a military justice system that not only is fair, but that also is perceived to be fair by members of the armed forces and the public.

The tension created by the placement of the military judiciary within the officer personnel structure requires military judges to be sensitive to particular circumstances that may require consideration of recusal. The fact that military judges may issue rulings adverse to the interests of superior officers, however, does not in itself preclude those judges from exercising independence in their judicial rulings. We note that while certain aspects of these concerns reflect particular features of military personnel practices, any tension between status and independence is not unique to the military. The circum-

---

5. This limitation does not apply in the rare instance that either the President or Service Secretary would serve as the convening authority. Art. 26(c).

6. The Army has recently established a regulatory system of tenure. *See* paras. 8–1g and 13–12, Army Regulation 27–10, "Military Justice" (20 August 1999).

stances faced by military judges are not at all dissimilar from those facing judges in those state court systems that provide for relatively brief terms of office, particularly those that provide for popular election of judges or retention through the electoral process.

In *Weiss v. United States*, 510 U.S. 163, 179, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994), the Supreme Court concluded that "the applicable provisions of the UCMJ, and corresponding regulations, by insulating military judges from the effects of command influence, sufficiently preserve judicial impartiality so as to satisfy the Due Process Clause" even though military judges do not have fixed terms of office.[7] The Court specifically noted that our Court "has demonstrated its vigilance in checking any attempts to exert improper influence over military judges." *Id.* at 181, 114 S.Ct. 752, citing *United States v. Mabe*, 33 MJ 200 (1991) (the Judge Advocate General or that officer's designee may not base the periodic rating of a military judge upon the rater's opinion of appropriateness of the sentences awarded by the judge), and *United States v. Graf*, 35 MJ 450, 465 (1992) (noting that decertification or transfer of a military judge based upon the Judge Advocate General's opinion of the sentences awarded by the judge would violate Articles 26 and 37, UCMJ, 10 USC § 837), *cert. denied*, 510 U.S. 1085, 114 S.Ct. 917, 127 L.Ed.2d 206 (1994). *See also United States v. Ledbetter*, 2 MJ 37 (disapproving official inquiries questioning decisions by military judge unless conducted in accordance with statutory standards, or, in the absence of such standards, under professional guidelines applicable in the civilian sector).[8]

Pursuant to the rulemaking authority in Article 36, UCMJ, 10 USC § 836, the President has supplemented Article 26 by prescribing RCM 902, "Disqualification of military judge." RCM 902 is based on the statute governing disqualification of federal civilian judges, 28 USC § 455. *See* Analysis of Rules for Courts–Martial, Manual, *supra* (1998 ed.) at 21–49. RCM 902(a) states: "[A] military judge shall disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." RCM 902(b) details five circumstances constituting specific grounds for disqualification of a military judge: (1) "personal bias or prejudice"; (2) acting in specified disqualifying capacities "as to any offense charged or in the same case generally"; (3) being a "witness in the same case" or an "accuser," as well as having "forwarded charges in the case with a personal recommendation as to disposition" or "expressed an opinion concerning the guilt or innocence of the accused"; (4) disqualification under RCM 502(c) or not being properly detailed under RCM 503(b); and (5) being related "within the third degree of relationship" to a party, a person with an interest in the outcome, or a likely material witness in the case.

We have held that preparation of fitness reports for appellate military judges by senior judge advocates does not create a circumstance in which the impartiality of a judge might reasonably be questioned under RCM 902(a). *United States v. Mitchell*, 39 MJ 131, *cert. denied*, 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994). Where a personnel action involving a military judge raised a question as to whether the action was taken in response to complaints about "light" sentences by the judge, we held that the judge's full disclosure on the record of the reasons for the personnel action, and his reasonable disavowal of any impact on his decisionmaking, obviated any requirement for disqualification under RCM 902(a). *United States v. Campos*, 42 MJ 253, 261 (1995). We have noted that "[j]udges have broad experiences

---

7. *See* n. 5, *supra*.

8. Subsequently, Congress in 1989 enacted Article 6a, UCMJ, 10 USC § 806a, which requires the President to prescribe procedures governing investigation and disposition of matters concerning the fitness of military judges. The legislative history notes that the procedures, "to the extent consistent with the [UCMJ], ... should emulate the standards and procedures that govern investigation and disposition of allegations concerning judges in the civilian sector." H.R. Conf. Rep. No. 331, 101st Cong., 1st Sess. 659 (1989), U.S.Code Cong. & Admin.News 1989, pp. 838, 1116.

and a wide array of backgrounds that are likely to develop ties with other attorneys, law firms, and agencies." *United States v. Wright*, 52 MJ 136, 141 (1999). Personal relationships between members of the judiciary and witnesses or other participants in the court-martial process do not necessarily require disqualification. *See United States v. Hamilton*, 41 MJ 32, 38–39 (CMA 1994).

 Where no actual bias or prejudice is shown, as in the present case, the issue of disqualification under RCM 902(a) is considered under an objective standard: "Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's 'impartiality might reasonable be questioned' is a basis for the judge's disqualification." *United States v. Kincheloe*, 14 MJ 40, 50 (CMA 1982), quoting E. Thode, *Reporter's Notes to Code of Judicial Conduct* 60 (1973); *see also Wright*, 52 MJ at 141. We have emphasized that "[w]here the military judge makes full disclosure on the record and affirmatively disclaims any impact on him, where the defense has full opportunity to *voir dire* the military judge and to present evidence on the question, and where such record demonstrates that appellant obviously was not prejudiced by the military judge's not recusing himself, the concerns of RCM 902(a) are fully met." *Campos*, 42 MJ at 262; *see also United States v. Cornett*, 47 MJ 128, 131 (1997). The decision of a military judge not to recuse himself or herself is reviewed on appeal for abuse of discretion. *Mitchell*, 39 MJ at 144 n. 7.

## B. Discussion

 In the present case, appellant has not alleged that there was any actual conflict, bias, or prejudice that would serve to disqualify the military judge. The fact that the military judge was assigned to the same organization and shared a similar professional affiliation as both appellant and those who processed her case do not constitute factors that would establish a *per se* disqualification of a military judge from sitting on an accused's case.

In terms of the actions under consideration at trial, we note that there was nothing un-

usual or controversial about the issues raised by the defense concerning the processing of the charges or the request for discharge in lieu of court-martial by the AFLSA commanders. Any experienced military judge would be fully aware of the administrative requirements undertaken by commanders under the UCMJ and Manual for Courts–Martial, and that such actions would support no inference adverse to an accused sitting before the military judge. We hold that the fact that those actions were taken by officers in the chain of command above both the military judge and this appellant created no risk that the military judge would fail to perform his normal judicial duties.

Moreover, in the present case, the superiors took themselves out of the decisionmaking process with respect to referral of charges. Their decision to do so reflected a desire to avoid any conflict-of-interest issues. The fact that the military judge had to rule on the propriety of their doing so did not raise an issue so controversial that an adverse decision would have had a significant and lasting direct impact on their professional reputations for competence and integrity. The issues in this case reflect the type of disagreements as to the meaning of policies and regulations that military judges decide on a daily basis without concern for the career impact on themselves, regardless of the role of senior commanders or judge advocates in crafting those policies or regulations.

Based upon the nature of the issues at stake, the full disclosure by the military judge on the record of his background and approach to the case, and the opportunity provided to the defense to *voir dire* the military judge, we are confident that appellant received a fair trial presided over by an impartial military judge and that a reasonable observer with knowledge of all the facts would not question the military judge's impartiality.

Each such case must be assessed on its own merits. Other facts and circumstances might call for a different approach. We have recognized the possibility that judicial officials may have relationships which cast suspicion upon their fairness or impartiality, and

which provide a basis to seek that judge's disqualification. *Compare United States v. Crider*, 21 USCMA 193, 196, 44 CMR 247, 250 (1972), *with United States v. Hurt*, 9 USCMA 735, 753, 27 CMR 3, 21 (1958). There may be cases in which the ruling by a military judge on an issue would have such a significant and lasting adverse direct impact on the professional reputation of a superior for competence and integrity that recusal should be considered. Few disagreements as to an issue of law are likely to fall in that category.

We hold that appellant was provided her constitutional, statutory, and regulatory rights to an impartial military judge. There were neither specific grounds to disqualify this military judge, nor any other grounds upon which this military judge's impartiality might reasonably be questioned.

We also reject appellant's claim that she was denied due process because she was not tried by a military judge from another service. She had an impartial judge. The fact that in one other case, an Air Force supervisory judge decided to use another service military judge out of an abundance of caution does not establish a legal requirement that the same be done for appellant; nor does it establish a binding requirement in all future cases. We would not want to discourage judicial and military justice officials from taking appropriate action to moot potential appellate issues. Absent a showing that such action was taken in a manner that created a pattern of discrimination against enlisted persons or that it was taken for the purpose of discriminating against a suspect class, we conclude there is no merit to appellant's claim that she was denied due process.

## II. PEREMPTORY CHALLENGE

### A. The Factual Background

Appellant's trial was convened with a panel consisting of five members. Major Fox was the only female detailed to the court. The *voir dire* did not reveal any grounds to challenge Major Fox for cause. Trial counsel exercised the Government's peremptory challenge against Major Fox. Defense counsel requested that trial counsel articulate a gender-neutral reason for the peremptory challenge. Without prompting from the military judge, trial counsel offered two reasons for exercising the peremptory challenge against Major Fox: (1) Major Fox had "far greater court-martial experience than any other member," and trial counsel "did not want the possibility of her using that experience to dominate the panel and therefore having a panel of one instead of five"; and (2) as a commander, Major Fox recently had disputes with the legal office, and trial counsel was concerned with potential "animosity" carrying over to the case. Defense counsel requested specifics on the nature of the disagreements with the legal office. The military judge, however, stated, "They don't have to. They gave me a neutral reason. The peremptory challenge is granted."

### B. Governing Legal Principles

Both federal civilian trial and court-martial practices condemn the discriminatory use of peremptory challenges. To ensure that justice is not tainted by purposeful discrimination, both jurisdictions have adopted procedures designed to permit challenges to discriminatory use of peremptory challenges and to make a public record reflecting the proper, nondiscriminatory use of peremptory challenges. *See Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *United States v. Greene*, 36 MJ 274 (CMA 1993); *United States v. Santiago–Davila*, 26 MJ 380 (CMA 1988). The right to challenge discriminatory use of peremptory challenges exists whether or not an accused is of the same race as the challenged juror; an accused may assert the equal protection rights of an excluded juror. *Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Discriminatory use of peremptory challenges is harmful to justice regardless of which party exercises that challenge. *See Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

The rationale and procedures developed under *Batson* also are applicable to peremptory challenges based upon gender. *J.E.B.*

*v. Alabama ex rel T.B.,* 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). We have specifically extended the holding in *J.E.B.* to court-martial procedure. *United States v. Witham,* 47 MJ 297 (1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *see also United States v. Ruiz,* 49 MJ 340 (1998).

■ In view of the differences between a civilian jury and a court-martial panel, there are some differences between military and civilian practice in terms of litigating a *Batson* issue. In civilian courts, the objecting party must make "a prima facie case of purposeful discrimination," *Batson,* 476 U.S. at 93–94, 106 S.Ct. 1712, whereas in military courts no *prima facie* showing is required where the accused is of the same racial group or gender as the challenged member. *See United States v. Moore,* 28 MJ 366, 368 (CMA 1989); *United States v. Ruiz, supra.*

■ We have also found that the differences between civilian trials and courts-martial practice warrant a different standard for assessing the validity of race-neutral reasons offered in support of a peremptory challenge. In *United States v. Tulloch,* 47 MJ 283 (1997), we held that in view of the convening authority's power of selection of court-martial members on the basis of the criteria in Article 25(d)(2), UCMJ, 10 USC § 825(d)(2), military counsel must articulate a reasonable racially neutral explanation that is not "implausible, or that otherwise makes no sense." *Tulloch, supra* at 287.

### C. Discussion

Trial counsel offered two reasons for striking Major Fox: (1) her "far greater court-martial experience ... and the government did not want the possibility of her using that experience to dominate the panel," and (2) a dispute with the legal office that trial counsel did not want to "spill over to this case." Because both reasons are facially gender neutral, we are not dealing with a situation such as that presented in *Greene,* 36 MJ at 282, where one of the explanations offered by trial counsel revealed patently impermissible discrimination. Were such a circumstance to exist, we would not shelter purposeful discrimination under the umbrella of a separate proper basis for a peremptory challenge.

Appellant urges that trial counsel's first asserted reason (prior court-martial experience) for striking Major Fox was unreasonable. The Court of Criminal Appeals questioned the validity of this reason, noting that Major Fox's experience as a court member was "directly related to her 'experience' and 'judicial temperament,' two of the specific statutory criteria the convening authority must consider when selecting court members." The court, however, sustained the peremptory challenge on the basis of the second, separate reason set forth by trial counsel. Unpub. op. at 5–6.

■ Because trial counsel's first asserted reason was not facially discriminatory, we may confine our consideration to trial counsel's second reason, which referred to a recent dispute between Major Fox and the legal office. Although it might have been helpful for the military judge to permit further testimony concerning the details of the underlying dispute between Major Fox and the legal office, we cannot say that his failure to do so constituted an abuse of discretion. Trial counsel's reference to a dispute between the member and the legal office set forth a reasonable, gender-neutral basis for the peremptory challenge. We find nothing in this record to undermine trial counsel's basic assertion that Major Fox had had a disagreement with the legal office. That fact, and the articulated concern that Major Fox might harbor a lingering animosity toward the legal office, constituted a valid reason for the peremptory challenge.

■ When the proponent of a peremptory challenge responds to a *Batson* objection with (1) a valid reason and (2) a separate reason that is not inherently discriminatory and on which the opposing party cannot demonstrate pretext, the denial of the *Batson* motion may be upheld on appeal. This is such a case.

### III. DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge CRAWFORD (concurring in part and in the result):

I concur with Part I of the opinion. As my colleague's excellent historical analysis demonstrates, if there is any "tension" created by the necessity of placing military judges within an officer personnel structure, I am fully confident that their judicial independence will allow them to make any and all rulings that are necessary in the interests of justice.

As I said in my dissent in *United States v. Tulloch*, 47 MJ 283, 289 (1997), our Court is bound by Supreme Court precedent. When challenged by defense counsel to articulate a gender-neutral reason for the peremptory challenge of Major Fox, trial counsel responded with two gender-neutral reasons. Nothing more was required. *See Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Trial counsel's explanations, that Major Fox had "far greater court-martial experience than any other member" and had been engaged in disputes with the legal office, are attributes that are not characteristic of either gender. I have also been unable to discover any differences between civilian trials and courts-martial that would cause me to eschew the standards set forth by the Supreme Court and create a new test for assessing the validity of race or gender neutral reasons offered in support of any peremptory challenge. Accordingly, I disassociate myself from any test that examines the genuineness of a peremptory challenge in a manner other than as set forth by the Supreme Court in *Purkett v. Elem, supra.*

SULLIVAN, Judge (concurring in part and in the result):

I join Chief Judge Crawford's separate opinion in this case. I too would hold that *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769 (1995), controls the granted issue and that it was satisfied in this case. See *United States v. Tulloch*, 47 MJ 283, 289 (1997) (Sullivan, J., dissenting).