# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CAMPANELLA, and CELTNIEKS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**First Lieutenant DAHUD HANID-ORTIZ**
**United States Army, Appellant**

ARMY 20140288

Headquarters, Seventh Army Joint Multinational Training Command
Christopher D. Carrier, Military Judge
Lieutenant Colonel Sean T. McGarry, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Major M. Patrick Gordon, JA; Captain J. David Hammond, JA (on brief).

For Appellee:  Major A.G. Courie III, JA; Major Daniel D. Derner, JA; Major Daniel M. Goldberg, JA (on brief).

30 June 2015

----------------------------------
MEMORANDUM OPINION
----------------------------------

CAMPANELLA, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of fraudulent appointment, false official statement, and larceny in violation of Articles 83, 107, and 121, Uniform Code of Military Justice, 10 U.S.C. §§883, 907 and 921 (2012)  [hereinafter UCMJ].  The military judge sentenced appellant to a dismissal, confinement for six months, total forfeitures and a fine of $25,000 which would increase appellant's confinement by two additional years if not paid.  The convening authority approved the sentence as adjudged.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises one assignment of error that warrants discussion but not relief.

## BACKGROUND

The charges to which appellant pleaded guilty stem from a series of actions committed over a period of several years. Appellant served seventeen years in the Army as an enlisted soldier followed by two years as a commissioned officer. Appellant deployed on multiple occasions for varying lengths of time to different locations over the period of his career, was awarded a Purple Heart for injuries received in Iraq, and suffered multiple physical and mental injuries as a result of his military service.

During his fourteenth year of Army service, appellant received field grade non-judicial punishment, a relief for cause non-commissioned officer evaluation, and a general officer letter of reprimand for the unauthorized wear of the Army Airborne skill badge. Despite the nature and egregiousness of this offense, appellant's command chose to allow him to stay in the Army and facilitated his rehabilitative reassignment to Korea shortly thereafter.

Appellant had long desired to become a commissioned Army officer. The aforementioned documentation in his permanent military file, however, was an obstacle the appellant had to overcome to reach his goal. Consequently, appellant submitted false documentation in his officer candidate school application packet with the hope being selected. The documentation included false Army Physical Fitness Training information, false medical information, and falsified superior reports of interviews and recommendations.

In February 2011, based on his fraudulent application, appellant received a commission as an Army quartermaster officer and the following month attended the basic course at Fort Lee, Virginia. Although appellant's wife and family lived with him in Virginia while he attended the basic course, appellant submitted documentation using a made-up New York City (NYC) address as a home address for his family so he would receive a basic housing allowance (BAH) at the increased NYC housing rate instead of the Fort Lee, Virginia, rate.

After he completed the quartermaster officer basic course at Fort Lee, appellant was assigned to Germany, where he moved with his wife and family. Despite the fact that his wife was in Germany with him, appellant continued to use a fraudulent NYC address for his family and received BAH at the NYC housing rate to which he was not entitled. During the two years appellant falsely represented his family's address, he received in excess of $87,000.00 in BAH to which he was not entitled.

After appellant's court-martial, the military judge held a post-trial "bridging the gap" session attended by the trial counsel, the military defense counsel, and the

civilian defense counsel. During this session, the military judge discussed his decision to adjudge a dismissal in appellant's case.

Appellant asserted in his post-trial clemency submission to the convening authority pursuant to Rule of Courts-Martial 1105 (hereinafter R.C.M.), that the military judge's statements during the bridging the gap session amounted to bias as the military judge indicated "he could envision no scenario in which a person convicted of false appointment was not adjudged a dismissal." As a remedy, the defense counsel requested the convening authority to disapprove appellant's dismissal. Based on appellant's post-trial clemency submission, the office of the staff judge advocate obtained memorandums of record (MFR) from the military judge and the trial counsel regarding the military judge's comments during the bridging the gap session.

The two MFRs were served on appellant and his defense counsel. Defense counsel did not comment further on the issue of sentencing bias by the military judge in appellant's R.C.M. 1105 matters. The SJA included these MFR in his post-trial advice to the convening authority. The convening authority granted appellant no relief regarding this issue.

The trial counsel's MFR stated in pertinent part:

> . . . the military judge, commented that he was the Chair of the Honor Committee while he was a student at the Citadel and made further personal comments about the importance of integrity, honor, and the oaths that are taken by Soldiers.
>
> Later in the session, a member of the defense team asked the Military Judge what they could have done better in arguing against the dismissal of the Officer. [The military judge] stated that based on the overwhelming evidence of fraud and deceit presented during the guilty plea, both through the stipulation of fact and witness testimony, there was no way he would have ever considered not dismissing the Officer.

The military judge's MFR stated in pertinent part:

> . . . I noted that the dismissal component of the sentence was logically connected to the nature of the offense of false appointment.

> I commonly advise counsel for both sides to argue how each component of a proposed sentence relates to the conduct of which the accused has been found guilty, because any finder of fact will find a sentencing argument more convincing if there is some meaningful connection to the recognized sentencing factors or particular facts of the case.
>
> I may have said that fifteen years service and being promoted to field-grade rank would not make a dismissal improper for a false appointment.
>
> I did not say that I could envision no scenario in which a person convicted of a false appointment would not be adjudged a dismissal, or words to that effect.
>
> Not only did I not say such things on this occasion, I would not have as a matter of mental habit and as a matter of propriety.
>
> To date I have been the trial judge for only one case of false appointment. Should I have another, I would consider all the facts and circumstances of the particular offense and the accused in deciding whether to adjudge a dismissal, as I did in *United States v. Hanid-Ortiz.*

Appellant now alleges that the comments made by the military judge during the bridging the gap session demonstrate the military judge's inelastic attitude towards the imposition of dismissal based solely on the nature of the crime of false appointment – specifically, that the military judge was improperly disposed to adjudge a punitive discharge depriving the accused of a fair and impartial hearing. To support the assertion that appellant was materially prejudiced, appellant provides affidavits from appellant's military and civilian defense counsel.

Appellant's military defense counsel writes in pertinent part:

> . . . The defense team was curious whether [appellant]'s long career, good service record, and many service-related injuries had done anything to influence the judge. I asked whether it made any difference that [appellant] was a competent officer – that he had been an officer for a number of years, had been promoted, and had received many favorable evaluations. [The military judge] indicated that it did not make any difference.

4

> [I] asked whether, if he had served another fifteen years and had been promoted to major or lieutenant colonel, that would make the false appointment less egregious. I believe I even added a Bronze Star with V Device or Purple Heart to the hypothetical, but [the military judge] stood firm. To the best of my recollection, his words were, "I cannot envision a scenario where someone who was falsely appointed as an officer would get to stay in."

Appellant's civilian defense counsel wrote:

> . . . I remember [the military judge]…stating that he "could not imagine a scenario where an officer, who really shouldn't be an officer, would be kept in the service." I responded that I tried to make it as "difficult on him as possible" based upon our case in extenuation and mitigation; to which the judge conceded that case made him consider the dismissal issue, but ultimately he again inferred that he had difficulty reconciling retention based upon the nature of the charge.

## LAW AND DISCUSSION

"An accused has a constitutional right to an impartial judge." *United States v. Martinez*, 70 M.J. 154, 157 (C.A.A.F. 2011) (quoting *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001)). A military judge's impartiality is crucial to the conduct of a legal and fair court-martial. *United States v. Quintanilla*, 56 M.J. 37, 43 (C.A.A.F. 2001). There is a strong presumption that a judge is impartial, and a party seeking to demonstrate bias must overcome a high hurdle, particularly when the alleged bias involves actions taken in conjunction with judicial proceedings. *Id.* at 44. The moving party has the burden of establishing a reasonable factual basis for disqualification and it must be based on more than mere surmise or conjecture. *See United States v. Allen*, 33 M.J. 209 (C.M.A. 1991).

There are two grounds for disqualification of a military judge, actual bias and apparent bias. R.C.M. 902; *Quintanilla*, 56 M.J. at 45. While R.C.M. 902(b) lists various circumstances where actual bias may require disqualification, R.C.M. 902(a) states that a military judge shall "disqualify himself or herself in any proceeding in which that military judge's impartiality might reasonably be questioned." With respect to the appearance of bias, the test we apply is "whether taken as a whole in the context of this trial, a court-martial's legality, fairness, and impartiality were put into doubt by the military judge's questions." *United States v. Burton*, 52 M.J. 223, 226 (C.A.A.F. 2000)(quoting *United States v. Reynolds*, 24 M.J. 261, 265 (C.M.A. 1987)). In the absence of actual bias or prejudice, disqualification under R.C.M.

5

902(a) is considered under an objective standard:  "Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's 'impartiality might reasonably be questioned' is a basis for the judge's disqualification."  *United States v. Norfleet*, 53 M.J. 262, 270 (C.A.A.F. 2000) (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982), quoting E. Thode, *Reporters Notes to Code of Judicial Conduct* 60 (1973)).  "The appearance standard is designed to enhance public confidence in the integrity of the judicial system."  *Quintanilla*, 56 M.J. at 45 (citing *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)).  Here, the appellant alleges apparent bias.

As a threshold matter, we must first look to whether a post-trial fact-finding hearing pursuant to *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967) is necessary and required and would assist the court.  *United States v. Ginn*, 47 M.J. 236 (1997).  We find in this case a *DuBay* hearing is not necessary.  A post-trial evidentiary hearing is not required simply because an affidavit is submitted by an appellant.  Applying the fourth *Ginn* factor, we conclude that an evidentiary hearing is not warranted.  Assuming appellant's affidavit is factually adequate on its face, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of those facts" and we may therefore "discount those factual assertions and decide the legal issues." *Id* at 248.

Appellant has not met his burden of establishing the military judge was improperly predisposed to adjudging a punitive discharge.  In rejecting this position, we first note appellant's argument is primarily based on appellant's military defense counsel's recollection.  The other three witnesses present, including appellant's civilian defense counsel, provide a more flexible variation of the military judge's comments during the post-trial session, making the military defense counsel's version less probable.  But even if we discount the military judge's and the trial counsel's version of the comments as self-serving, the civilian defense counsel specifically states in his affidavit that "the judge conceded [during the bridging the gap session] the [sentencing] case *made him consider the dismissal issue*" (emphasis added).  The fact that the military judge considered not judging a dismissal in appellant's case is all that is required in demonstrating he had an open mind concerning various sentencing options.  He need not side with appellant – only consider adjudging or not adjudging any authorized punishments. *See United States v. Greaves*, 48 M.J. 885 (AF Ct. Crim. App 1998).

The military judge's commentary must be viewed objectively though the prism of context.  It is not unusual that an officer in the armed services would have strong attitudes about the importance of soldier integrity. Appellant pleaded guilty to obtaining his commission fraudulently, lying, and stealing from the government.  The military judge's comments to counsel connecting his decision to adjudge a dismissal with appellant's underlying fraudulent conduct are logical and would not,

under these facts, undermine the public's confidence or essential faith in the court-martial process. We conclude the military judge's comments did not evince an inelastic sentencing attitude and did not result in a situation which would cause us to reasonably question his impartiality or the legality or fairness of appellant's court-martial.

## CONCLUSION

Upon consideration of the entire record and the submissions of the parties we hold the finding of guilty and the sentence are AFFIRMED.

Senior Judge TOZZI and Judge CELTNIEKS concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7