*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

—————————

## UNITED STATES
Appellee

**v.**

## Thomas L. WHEELER, Master-at-Arms Third Class
United States Navy, Appellant

**No. 23-0140**
Crim. App. No. 202100091

Argued December 19, 2023—Decided August 22, 2024

Military Judge: Kimberly J. Kelly

For Appellant: *Lieutenant Commander Megan P. Marinos*, JAGC, USN (argued); *Major Jasper Casey*, USMC.

For Appellee: *Colonel Joseph M. Jennings*, USMC (argued); *Captain Tyler W. Blair*, USMC, and *Brian K. Keller*, Esq. (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

—————————

Judge JOHNSON delivered the opinion of the Court.

This case involves a charge of sleeping on post that was referred to a military judge-alone special court-martial. Had the convening authority referred this case to a general court-martial, Appellant would have been entitled to trial before a panel of members, Article 16(b)(1), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 816(b)(1) (2018), and the maximum punishment would have included a dishonorable discharge, forfeiture of all pay and allowances, and one year of confinement. *Manual for Courts-Martial, United States* pt. IV, para. 22.d.(1)(c) (2019 ed.) (*MCM*). Instead, the convening authority referred the charge to a special court-martial before a military judge alone pursuant to Article 16(c)(2)(A), UCMJ, 10 U.S.C. § 816(c)(2)(A) (2018). As a result, Appellant could not elect trial by a panel of members and the military judge was barred from adjudging a sentence that included a punitive discharge, confinement for more than six months, Article 19(b), UCMJ, 10 U.S.C. § 819(b) (2018), or forfeitures of pay for more than six months. Rule for Courts-Martial (R.C.M.) 201(f)(2)(B)(ii) (2019 ed.).

We hold that Appellant had no Fifth Amendment due process right to a court-martial consisting of a panel of members in a forum that statutorily limited the maximum possible sentence to six months of confinement with no punitive discharge authorized. Additionally, we hold that the convening authority's referral of this case to a military judge-alone special court-martial did not violate Fifth Amendment due process. We therefore affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA).

## I. Background

Appellant was charged with one specification of sleeping on post in violation of Article 95, UCMJ, 10 U.S.C. § 895 (2018), after he was discovered asleep at his post as sentinel onboard a harbor patrol boat at Naval Station Everett, Washington. The convening authority referred the charge

under Article 16(c)(2)(A), UCMJ, to a special court-martial before a military judge alone.

Before trial, Appellant filed a motion to dismiss, arguing that sleeping on post is a " 'serious' offense" which implicated his Fifth and Sixth Amendment rights to trial by a panel of members, and therefore, the military judge-alone special court-martial lacked jurisdiction absent Appellant's knowing and voluntary election of a military judge-alone forum. The military judge denied the motion, concluding that the military judge-alone special court-martial "whether on its face or as applied in this case is consistent with due process."

Contrary to his pleas, Appellant was convicted of sleeping on post in violation of Article 95, UCMJ, and sentenced to fifteen days of confinement.[1] In an en banc published opinion, the NMCCA affirmed the findings and sentence. *United States v. Wheeler*, 83 M.J. 581, 592 (N-M. Ct. Crim. App. 2023) (en banc).

We granted review to consider two issues:

> I. Did the lower court err in holding that the Due Process Clause of the Fifth Amendment does not protect a servicemember's fundamental right to a panel of members at court-martial?

> II. Did the lower court err by deferring to a convening authority's case-by-case referral decision rather than an objective standard to determine whether an offense is serious?

---

[1] The convening authority suspended confinement in excess of seven days for six months from the entry of judgment, to be remitted at that time without further action unless vacated sooner. A judge advocate reviewed the record pursuant to Article 65(d), UCMJ, 10 U.S.C. § 865(d) (2018), and did not recommend any corrective action. Upon Appellant's application for relief pursuant to Article 69, UCMJ, 10 U.S.C. § 869 (2018), the Judge Advocate General of the Navy forwarded the record to the NMCCA, recommending review of the question whether Appellant's Fifth and Sixth Amendment rights were violated by the convening authority's referral of the charge to a forum offering no right to a panel verdict.

*United States v. Wheeler*, 83 M.J. 393 (C.A.A.F. 2023) (order granting review). For the reasons set forth below, we answer both questions in the negative and affirm the decision of the NMCCA.

## II. Standard of Review

The constitutionality of a statute is a question of law reviewed de novo. *United States v. Begani*, 81 M.J. 273, 280 (C.A.A.F. 2021).

## III. Discussion

### A. The Military Judge-Alone Special Court-Martial

In 2016, Congress amended Articles 16 and 19, UCMJ, to create a new kind of special court-martial by military judge alone. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5161, 130 Stat. 2000, 2898 (2016). As amended, Article 16, UCMJ, allows a convening authority to refer a case to a special court-martial consisting of a military judge alone, subject to the restrictions found in Article 19, UCMJ, and "such limitations as the President may prescribe by regulation." Article 16(c)(2)(A), UCMJ. Article 19(b), UCMJ, as amended, states, "Neither a bad-conduct discharge, nor confinement for more than six months . . . may be adjudged if charges and specifications are referred to a special court-martial consisting of a military judge alone." Article 19(b), UCMJ.

Before these changes were enacted, a case referred to a special court-martial could be tried by military judge alone only upon the request of the accused. Article 16(2)(C), UCMJ, 10 U.S.C. § 816(2)(C) (2012). However, in 2015 the Military Justice Review Group (MJRG) recommended giving the convening authority discretionary authority to refer a case to a military judge-alone special court-martial, subject to limitations on the military judge's authority to adjudge confinement, forfeitures, and a punitive discharge, and subject to further limitations to be prescribed by the President. Office of the General Counsel, Dep't of Defense, Report of the Military Justice Review Group 217 (Dec. 22, 2015) [hereinafter the MJRG Report]. The proposed changes were designed to "offer military commanders a

new disposition option for low-level criminal misconduct—one that would be more efficient and less burdensome on the command than a special court-martial, but without the option for the member to refuse as in summary courts-martial and non-judicial punishment." *Id.* at 222. The MJRG's recommendations drew "upon the successful experience of the military justice system with judge-alone trials since 1968" and "upon the experience in the federal civilian system, as well as in state courts, in which an accused defendant does not have the right to trial by jury when the confinement does not exceed six months." *Id.* at 221.

Congress adopted the MJRG's recommendations, amending Articles 16 and 19 "to improv[e] the efficiency of the military justice system." H.R. Rep. No. 114-537, at 600 (2016). The President then promulgated rules to implement these changes. R.C.M. 201(f)(2)(B)(ii) states, "A bad-conduct discharge, confinement for more than six months, or forfeiture of pay for more than six months, may not be adjudged by a special court-martial when the case is referred as a special court-martial consisting of a military judge alone under Article 16(c)(2)(A)." R.C.M. 201(f)(2)(E) (2019 ed.) bars military judge-alone special court-martial jurisdiction if the accused objects before arraignment and the military judge determines that (I) the maximum authorized confinement would be greater than two years if the case was tried by a general court-martial (with exceptions not applicable here) or (II) sex offender registration would be required.

### B. Fifth Amendment Due Process in Courts-Martial

The first granted issue asks whether the lower court erred in holding that there is no Fifth Amendment due process right to a panel of members at courts-martial. Appellant contends that the Sixth Amendment guarantee of an impartial jury for all criminal prosecutions of serious offenses is a "bedrock procedural right" protected by the Due Process Clause of the Fifth Amendment.[2] He argues that

---

[2] Although Appellant asserted a Sixth Amendment violation before the lower court, at oral argument he conceded that his

he was entitled to trial before a panel of members because he was charged with a serious offense—that is, one with a maximum sentence to confinement of one year.

The NMCCA recognized that servicemembers historically enjoyed a right to a panel of members at special courts-martial, due in part to the fact that military judges did not exist until they were created by Congress in 1968. *Wheeler*, 83 M.J. at 587. But citing Congress's authority to make changes to the UCMJ and to delegate to the President the power to promulgate rules to implement Congress's legislative changes, the court found "no case law holding that historical practice created a fundamental right that precluded" the new military judge-alone special court-martial. *Id*. We conclude that the NMCCA did not err.

The Fifth Amendment to the Constitution provides, in part, that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because servicemembers who are subject to appear before a court-martial "may be subjected to loss of liberty or property," they "are entitled to the due process of law guaranteed by the Fifth Amendment. Whether this process embodies" a specific right—in this case, a right to be tried by a panel of members—"depends upon an analysis of the interests of the individual and those of the regime to which he is subject." *Middendorf*, 425 U.S. at 43; *see United States v. Graf*, 35 M.J. 450, 461 (C.M.A 1992) (recognizing that the Due Process Clause of the Fifth Amendment applies to servicemembers at special courts-martial). A procedure does not violate the Due Process Clause of the Fifth Amendment unless " 'it offends some principle of justice so

_____

appeal was based solely on a Fifth Amendment due process violation. *Wheeler*, 83 M.J. at 584-85. He did not assert a Sixth Amendment violation before this Court. Therefore, we do not address the applicability of the Sixth Amendment jury clause to this case. *But see United States v. Anderson*, 83 M.J. 291, 294-95 (C.A.A.F. 2023) ("[T]he Supreme Court has repeatedly stated that the Sixth Amendment right to a jury does not apply to courts-martial." (citing cases dating to 1866)).

rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Graf*, 35 M.J. at 462 (emphasis removed) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).

"Congress has primary responsibility for the delicate task of balancing the rights of servicemen against the needs of the military," *Solorio v. United States*, 483 U.S. 435, 447 (1987), subject to the requirements of the Due Process Clause, *Weiss v. United States*, 510 U.S. 163, 176-77 (1994) (noting that "Congress, of course, is subject to the requirements of the Due Process Clause when legislating in the area of military affairs, and that Clause provides some measure of protection to defendants in military proceedings"). "[I]n determining what process is due, courts must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces." *Weiss*, 510 U.S. at 176-77 (citation omitted) (internal quotation marks omitted); *see Anderson*, 83 M.J. at 298 ("When Congress acts pursuant to its power to make Rules for the Government and Regulation of the land and naval Forces, judicial deference is at its apogee." (citations omitted) (internal quotation marks omitted)).

"To succeed in a due process challenge to a statutory court-martial procedure, an appellant must demonstrate that the factors militating in favor of [a different procedure] are so extraordinarily weighty as to overcome the balance struck by Congress." *Anderson*, 83 M.J. at 298 (alteration in original) (citation omitted) (internal quotation marks omitted). In weighing the servicemember's interests in a procedural right against the needs of the military, the Court must consider (1) historical practice with respect to the procedure at issue, *Weiss*, 510 U.S. at 179, (2) the effect of the asserted right on the military, *Middendorf*, 425 U.S. at 45, and (3) the existence in current practice of other procedural safeguards that satisfy the Due Process Clause of the Fifth Amendment, *Weiss*, 510 U.S. at 181.

Accordingly, we consider each of these factors in turn to decide whether the unrefusable military judge-alone special court-martial created by Congress, as defined in

Articles 16 and 19, UCMJ, and implemented by R.C.M. 201(f)(2), offends fundamental principles of justice in violation of Fifth Amendment due process.

### 1. Historical Practice

The lower court succinctly summarized the long historical tradition of courts-martial by panels of members:

> For nearly 200 years, courts-martial in the United States military consisted solely of panels of members of varying numbers and types. This was true for general courts-martial as well as "lesser" courts-martial (the predecessor of our current special courts-martial). This requirement continued with the creation of the UCMJ in 1951. In 1968, Congress created military judges and, for the first time, authorized courts-martial without panel members—but only when an accused requested it.

*Wheeler*, 83 M.J. at 586 (footnotes omitted) (citing David A. Schlueter, *The Court-Martial: A Historical Survey*, 87 Mil. L. Rev. 129 (1980)).[3]

---

[3] We note that alongside the tradition of courts-martial by panel there exists an equally long tradition of disposition of minor offenses—both civilian and military—without a jury or a panel. For example, the Government described military proceedings dating as far back as 1775 in which a solitary officer could in his sole discretion administer limited punishments for low-level offenses. *See, e.g., Wilkes v. Dinsman*, 48 U.S. 89, 127 (1849) ("Where a private in the navy, therefore, is guilty of any 'scandalous conduct,' the commander is . . . authorized to inflict on him twelve lashes, without the formality of a court-martial." (citing 2 Stat. 45-46 (1800)); George B. Davis, *A Treatise on the Military Law of the United States* 25 (2d ed. 1899) (describing the field officer's court, created by Congress during the Civil War, which was composed of a single officer); William Winthrop, *Military Law and Precedents* 490 (2d ed. 1920) (noting that a field officer's court could impose up to one month of confinement or hard labor and a fine of up to one month of pay). In the civilian context, the Sixth Amendment right to trial by jury applies only to serious offenses; any offense where the accused cannot possibly be sentenced to more than six months of confinement is presumed to be a petty offense not subject to the Sixth Amendment

Against that backdrop, we agree with the lower court that "the possibility of a criminal conviction at an unrefusable proceeding without members *is* remarkable." *Id.* at 587-88. Therefore, this factor weighs in favor of a due process right to a panel in this case.

### 2. Effect on the Military

The unrefusable military judge-alone special court-martial was created to "improv[e] the efficiency of the military justice system." The MJRG recommended this new forum as a "more efficient and less burdensome" way for a command to address low-level misconduct:

> The judge-alone special court-martial will provide the convening authority with a greater range of disposition options, which may prove particularly useful when addressing cases involving a request for court-martial arising out of a non-judicial punishment or summary court-martial refusal, and in deployed environments where operational demands may make it difficult to assemble a panel to address cases involving minor misconduct.

MJRG Report at 222. The MJRG noted that the proposal was "[c]onsistent with the constitutional authority to authorize civilian non-jury trials without obtaining a defendant's consent in cases involving confinement for six months or less." *Id.* at 217.

In *Middendorf*, the Supreme Court found that similar considerations outweighed a servicemember's claim to a Fifth Amendment due process right to counsel in a summary court-martial, "an informal proceeding conducted by a single commissioned officer" with limited authority to

---

jury clause. *Blanton v. City of North Las Vegas*, 489 U.S. 538, 543 (1989); *see Callan v. Wilson*, 127 U.S. 540, 555 (1888) ("conceding that there is a class of petty or minor offenses . . . which, if committed in this District, may, under the authority of congress, be tried by the court and without a jury"); *Schick v. United States*, 195 U.S. 65, 70 (1904) (noting that there is no constitutional right to trial by jury for petty offenses).

adjudge punishments,[4] whose purpose " 'is to exercise justice promptly for relatively minor offenses under a simple form of procedure.' " 425 U.S. at 32 (quoting *MCM* para. 79.*a.* (1969 ed.)). The Court found that requiring counsel to be provided to servicemembers at summary courts-martial would impose a "particular burden" on the military "because virtually all the participants, including the defendant and his counsel, are members of the military whose time may be better spent than in possibly protracted disputes over the imposition of discipline." *Id.* at 45-46.

Although the summary court-martial discussed in *Middendorf* is not a criminal forum and does not result in a criminal conviction, *see* Article 20(a), UCMJ, the *Middendorf* analysis of the burdens that would accompany the proposed process is equally applicable to the special court-martial at issue in this case. Allowing a servicemember to refuse a military judge-alone special court-martial in favor of a proceeding before a panel of members would require the detailing and voir dire of a prospective panel. This would result in a longer proceeding requiring more servicemembers to be pulled away from their regular duties in order to serve as prospective and selected panelists in a case involving offenses the command deemed minor. *See Toth v. Quarles*, 350 U.S. 11, 17 (1955) ("[I]t is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise. . . . To the extent that those responsible for performance of this primary function are diverted from it by the necessity of trying cases, the basic fighting purpose of armies is not served."). As a result, allowing a servicemember to refuse a military judge-alone special court-martial would burden the military by

---

[4] A summary court-martial may "adjudge any punishment not forbidden by this chapter except death, dismissal, dishonorable or bad-conduct discharge, confinement for more than one month, hard-labor without confinement for more than 45 days, restriction to specified limits for more than two months, or forfeiture of more than two-thirds of one month's pay." Article 20(a), UCMJ, 10 U.S.C. § 820(a) (2018).

transforming a proceeding "which may be quickly convened and rapidly concluded into an attenuated proceeding which consumes the resources of the military to a degree which Congress could properly have felt to be beyond what is warranted by the relative insignificance of the offenses being tried." *Middendorf*, 425 U.S. at 45. We therefore conclude that this factor weighs against finding a due process right to a panel in this case.

### 3. Legal Safeguards

Finally, we must determine whether there are adequate procedural safeguards to ensure a servicemember receives a fair trial before a military judge-alone special court-martial. Appellant contends that a multi-member panel is essential to prevent a "miscarriage of justice that is risked by trial before a sole fact-finder whose latent biases or limits on interpreting evidence will never be mitigated by the perspectives of fellow fact-finding members." We understand Appellant's concerns and recognize the potential benefits of having multiple factfinders in a criminal case. *See Ballew v. Georgia*, 435 U.S. 223, 232-38 (1978) (discussing these potential benefits). However, we are not persuaded that these potential benefits would increase the fairness of a special court-martial so much that multiple factfinders are constitutionally required. We reach this conclusion in part because, even without multiple factfinders, several features of the military justice system ensure the impartiality of the military judge and the fairness of the trial.

First, a qualified, independent military judge presides over each military judge-alone special court-martial. Article 26(a), (b), UCMJ, 10 U.S.C. § 826(a), (b) (2018). In *Graf*, we concluded that the UCMJ provides substantial safeguards of a military judge's independence. 35 M.J. at 463. There, the appellant argued that the absence of a fixed term of office for the military judges and appellate military judges who presided over his case precluded their judicial independence, in violation of the Due Process Clause of the Fifth Amendment. *Id.* at 454. While we recognized that the Fifth Amendment Due Process Clause applies to a servicemember at court-martial, *id.*, we held that "other

11

guarantees of independence provided for military trial judges" in the UCMJ ensure "that court-martial judges can independently and fairly perform their duties without protection of a fixed term of office." *Id.* at 463. Specifically, we noted that the UCMJ:

- "provides for an administrative method of complaint against interfering superiors within the uniformed service itself, which ultimately requires the attention of the civilian secretary of that service," *id.* (citing Article 138, UCMJ, 10 U.S.C. § 938);

- "provides for the preferral of charges and possible court-martial of any servicemember, whatever his grade or rank, who influences or attempts to influence a judge's findings or sentencing decisions at courts-martial," *id.* (citing Article 37, UCMJ, 10 U.S.C. § 837); and

- "in extraordinary cases where the above remedies are not adequate, resort to this Court under the All Writs Act, 28 U.S.C. § 1651(a), is possible." *Id.* (citing cases).

Those same provisions ensure the impartiality of the military judge in this case.[5]

Second, an accused facing a military judge-alone special court-martial is entitled, at no cost to the accused, to detailed military defense counsel, Article 27(a), UCMJ, 10 U.S.C. § 827(a) (2018), or, to the extent reasonably available, to military defense counsel of the accused's choosing, Article 38(b)(3)(B), UCMJ, 10 U.S.C. § 838(b)(3)(B) (2018).

Third, R.C.M. 201(f)(2)(E) limits the offenses that can be referred to a military judge-alone special court-martial while Article 19(b), UCMJ, and R.C.M. 201(f)(2)(B)(ii) limit the punishments that can be adjudged, regardless of the specific offenses or number of offenses tried. As a result, Appellant's potential legal exposure to confinement was

---

[5] We note that while the defense advocated for dismissal for lack of jurisdiction, the defense did not challenge the military judge's impartiality in this case.

statutorily constrained to preclude more than six months of confinement or a punitive discharge. *See Middendorf*, 425 U.S. at 40 n.17 (noting that a servicemember forced to face a summary court-martial that could only impose one month of imprisonment for an offense that carried a ten-year maximum "would no doubt be delighted at his good fortune").

Fourth, despite the fact that Appellant did not have a right of direct appeal to the NMCCA, Appellant's conviction was subject to post-trial review by a qualified judge advocate, Article 65(d)(2), UCMJ, the Judge Advocate General, Article 69(a), UCMJ, and the NMCCA, Article 66(b), UCMJ, to the same extent as any other general or special court-martial resulting in the same sentence.[6] The existence of all of these procedural safeguards weighs against a due process right to a panel in this case.

### 4. Weighing the Interests

After weighing Appellant's interests in a court-martial before a panel against the needs of the military, and taking into account historical practice with respect to courts-martial before panels, the effect of such a right on the military, and the existence in current practice of other procedural safeguards that satisfy the Due Process Clause of the Fifth Amendment, we agree with the lower court's conclusion that the benefits of a multi-member panel are not so weighty as to overcome the balance struck by Congress and the President. *See Wheeler*, 83 M.J. at 591-92. Although we conclude that historical tradition weighs in favor of finding a due process right to a panel, historical tradition is not dispositive of the question whether a proceeding violates Fifth Amendment due process. *Anderson*, 83 M.J. at 299.

---

[6] Congress has now given an accused the right to appeal all convictions by special or general courts-martial, regardless of their punishments, to the Courts of Criminal Appeals. *See* Article 66(b)(1), UCMJ, 10 U.S.C. § 866(b)(1) (Supp. V 2023) (granting jurisdiction over "a timely appeal from the judgment of a court-martial, entered into the record . . . , that includes a finding of guilty").

As the Supreme Court noted in *Solorio,* there is nothing in the Constitution that suggests that "court-martial usage at a particular time [must be frozen] in such a way that Congress might not change it." 483 U.S. at 446. In determining whether the historical tradition of courts-martial before member panels gives rise to a right to a panel in this case, "we must give particular deference" to Congress's determination that an unrefusable military judge-alone special court-martial promotes discipline in the armed forces and enhances a commander's ability to fairly and efficiently deal with minor offenses. *Middendorf,* 425 U.S. at 43.

Appellant "has the burden to demonstrate that Congress' determination should not be followed." *United States v. Vazquez*, 72 M.J. 13, 19 (C.A.A.F. 2013) (first citing *Weiss*, 510 U.S. at 181; and then citing *United States v. Mitchell*, 39 M.J. 131, 137 (C.M.A. 1994) (the appellant bears a " 'heavy burden to show the Constitutional invalidity of this facet of the military justice system' ")). Affording due deference to Congress's determination that the military judge-alone special court-martial promotes fairness and efficiency, we conclude that Appellant has not met his burden. We therefore hold that the unrefusable military judge-alone special court-martial where neither a punitive discharge nor confinement of more than six months may be adjudged does not run afoul of the Fifth Amendment Due Process Clause.

### C. The Convening Authority's Referral Decision

The second granted issue asks about the convening authority's referral of this case to an unrefusable military judge-alone special court-martial. According to Appellant, sleeping on post is an objectively serious offense because it is punishable by up to one year of confinement, forfeiture of all pay and allowances, and a dishonorable discharge. *See Baldwin v. New York*, 399 U.S. 66, 69 (1970) (holding "that no offense can be deemed 'petty' for purposes of the right to trial by jury where imprisonment for more than six months is authorized"). He argues that the convening authority's referral decision violated his fundamental due

process right to have a serious offense tried by a panel of members.

We disagree. Congress created the military judge-alone special court-martial pursuant to its constitutionally bestowed authority "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const. art. I, § 8, cl. 14. Then, Congress delegated to the President the authority to promulgate regulations implementing the changes to Articles 16 and 19. Article 16(c)(2)(A), UCMJ. The Supreme Court "established long ago that Congress must be permitted to delegate to others at least some authority that it could exercise itself." *Loving v. United States*, 517 U.S. 748, 758 (1996). The delegation of authority to determine whether a case shall be referred to a forum that limits the maximum sentence that may be adjudged is a proper exercise of Congress's power to delegate "the authority to make policies and rules that implement its statutes." *Id.* at 771.

Pursuant to Congress's delegation of power, the President promulgated rules limiting the cases that a convening authority may refer to a military judge-alone special court-martial and further limiting the punishments that may be adjudged therein. R.C.M. 201(f)(2)(B)(ii); R.C.M. 201(f)(2)(E)(i). In *Loving*, the Supreme Court noted, " 'The military constitutes a specialized community governed by a separate discipline from that of the civilian,' and the President can be entrusted to determine what limitations and conditions on punishments are best suited to preserve that special discipline." 517 U.S. at 773 (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)). Therefore, the Court found "no fault" in Congress's delegation of power to the President to prescribe aggravating factors that permit application of the statutory death penalty in military capital cases. *Id.* at 772. Additionally, the Court concluded that the President's promulgation of a Rule for Courts-Martial implementing the statutory death penalty and narrowing the category of death-eligible cases, "was well within the delegated authority." *Id.* at 774. Here, as in *Loving*, the President

15

acted within his delegated authority to prescribe rules narrowing the category of cases that may be referred to a military judge-alone special court-martial and limiting the punishments that can be adjudged in that forum.

The discretion to refer charges to the new forum was appropriately vested in the convening authority, subject to the limitations prescribed by Articles 16 and 19 and R.C.M. 201(f)(2)(B)(ii) and 201(f)(2)(E)(i). *See United States v. Nachtigal*, 507 U.S. 1, 4 (1993) (Congress's delegation of power to the President is not "stripped of its 'legislative' character merely because the [convening authority] has final authority to decide, within the limits given by Congress, what the maximum prison sentence will be for a violation of a given regulation."). "[T]he special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale." *Brown v. Glines*, 444 U.S. 348, 360 (1980). As we have observed:

> One of the hallmarks of the military justice system is the broad discretion vested in commanders to choose the appropriate disposition of alleged offenses. The critical responsibility of commanders for the morale, welfare, good order, discipline, and military effectiveness of their units traditionally has been viewed as requiring the exercise of such discretion.
>
> The discretionary disposition authority of commanders includes the power to take no action, dismiss charges, initiate administrative actions under applicable regulations, institute [nonjudicial punishment] proceedings under Article 15, refer the matter to a summary, special, or general court-martial, or forward it to a superior commander.

*United States v. Gammons*, 51 M.J. 169, 173 (C.A.A.F. 1999).

The convening authority's referral of this case to a military judge-alone special court-martial was a proper exercise of statutory authority. Article 16(c)(2)(A) provides that a special court-martial may consist of a military judge

alone "if the case is so referred by the convening authority, subject to [Article 19, UCMJ,] and such limitations as the President may prescribe by regulation." Article 16(c)(2)(A). Here, the referral was consistent with the limitations imposed by Congress in Article 19, UCMJ (limiting the maximum punishments that may be adjudged), and with the additional limitations imposed by the President in R.C.M. 201(f)(2)(B)(ii) (imposing an additional limitation on the maximum permissible sentence), and R.C.M. 201(f)(2)(E)(i) (barring referral to a military judge-alone special court-martial if the accused objects and the maximum sentence at a general court-martial would exceed two years of confinement, or if sex offender registration would be required).[7]

## IV. Conclusion

We hold that Appellant had no Fifth Amendment due process right to a trial before a panel of members where the military judge-alone special court-martial forum limited the maximum confinement that could be adjudged to six months and precluded a punitive discharge. We also hold that the convening authority's forum selection in accordance with Articles 16 and 19, UCMJ, and R.C.M. 201 did not violate due process. Therefore, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[7] Although Appellant objected to the military judge-alone special court-martial's jurisdiction, he could not prevail where the maximum confinement exposure he would have faced at a general court-martial was one year of confinement, and a conviction would not subject him to sex offender registration.